100 P.3d 911

**STATE of Arizona, Appellee,**

v.

**Robert Allen HENDERSON, Appellant.**

**No. 1 CA–CR 03–0920.**

Court of Appeals of Arizona,
Division 1, Department D.

Nov. 18, 2004.

As Corrected Nov. 19, 2004.

Review Granted in Part March 22, 2005.

Terry Goddard, Attorney General by Randall M. Howe, Chief Counsel, Criminal Appeals Section and Nicholas D. Acedo, Assistant Attorney General, Phoenix, Attorneys for Appellee.

James J. Haas, Maricopa County Public Defender By Edward F. McGee, Deputy

Public Defender, Phoenix, Attorneys for Appellant.

## OPINION

BARKER, Judge.

¶1 We address in this opinion one of the issues presented by the United States Supreme Court's recent decision in *Blakely v. Washington*, —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). Specifically, we hold that the failure to submit aggravating factors to a jury pursuant to *Blakely* is not structural error requiring automatic reversal. Rather, we determine that *Blakely* error is subject to a harmless error or fundamental error analysis and may or may not require reversal based on the facts of the particular case. In this case we find the error is not harmless. Accordingly, we remand for resentencing.

## I.

¶2 Robert Allen Henderson ("appellant") appeals his sentences following conviction in the trial court. Appellant was indicted on three counts: kidnaping, a class 2 felony; assault, a class 1 misdemeanor; and threatening or intimidating, a class 1 misdemeanor. After a jury trial, he was convicted of the two misdemeanor charges. The jury did not find him guilty of kidnaping, but instead found him guilty of the lesser-included offense of unlawful imprisonment, a class 6 felony.

¶3 At sentencing, the trial court sentenced appellant to six months' incarceration for each of the misdemeanor counts. For the unlawful imprisonment count, the court imposed an exceptionally aggravated prison term of two years. All three sentences were ordered to run concurrently.

¶4 Appellant timely appealed. His initial brief raised two issues and requested that the sentence be vacated.[1] Since that time, *Blakely* was announced. Appellant now asserts *Blakely* error and requests that the sentence for unlawful imprisonment be vacated.[2] This court has received supplemental briefing from each of the parties on the *Blakely* issue. Because we remand on *Blakely* we need not reach the initial sentencing issues presented by appellant. We have jurisdiction pursuant to Article 6, Section 9 of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") sections 12–120.21(A)(1) (2003), 13–4031 (2001), and 13–4033(A)(3) (2001).

## II.

¶5 In *Blakely*, the Court held that "[w]hen a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts 'which the law makes essential to the punishment' and the judge exceeds his proper authority." —— U.S. at ——, 124 S.Ct. at 2537 (quoting 1 J. Bishop, *Criminal Procedure* § 87, at 55 (2d ed. 1872)). The Court stated that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" *Id.* The Court further explained that "the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum [the judge] may impose *without* any additional findings." *Id.*

¶6 In Arizona, A.R.S. § 13–701(A) (2001) provides that "imprisonment for a felony shall be a definite term of years" and then sets forth the term of years applicable for first-time felony offenses. For appellant's class 6 felony conviction, the term is one year. A.R.S. § 13–701(C)(5). This term is typically referenced as the presumptive term. *State v. Brown*, 205 Ariz. 325, 332, ¶24, 70 P.3d 454, 461 (App.2003). In the language of *Blakely*, this is the "statutory maximum." *Blakely*, —— U.S. at ——, 124 S.Ct. at 2537. Section 13–702(A) (2001) provides that the

---

1. Appellant initially alleged that the trial court erred in the sentence on the two misdemeanors by not giving him credit for the exact amount of his pre-sentence incarceration. He also contended that the trial court erred by considering two improper aggravating factors and using them to justify an exceptionally aggravated term.

2. Appellant further asserts that on remand Arizona's sentencing scheme, in light of *Blakely*, no longer permits aggravated sentences. That argument was recently rejected in *State v. Conn*, 209 Ariz. 195, 98 P.3d 881 (App.2004).

presumptive sentence may be "increased or reduced by the court." That section also provides that "[a]ny reduction or increase shall be based on the aggravating and mitigating circumstances" set forth therein and be limited to the range specified. *Id.* As to the offense for which appellant was convicted, the upward limit is 1.5 years. *Id.* Section 13–702.01(A) further provides that "if the court finds that at least two substantial aggravating factors listed in § 13–702" are present, then the sentence may be further increased to two years.

■ ¶ 7 Applying *Blakely's* definition of "statutory maximum" to the Arizona scheme renders the following result: Unless admitted by defendant or waived by the parties, any sentence beyond a presumptive term must be based on at least one aggravating factor found by a jury for purposes of A.R.S. § 13–702(A) and at least two "substantial" aggravating factors for purposes of A.R.S. § 13–702.01(A). As stated in *Blakely,*

> Whether the judge's authority to impose an enhanced sentence depends on finding a specified fact (as in *Apprendi*), one of several specified facts (as in *Ring*), or *any* aggravating fact (as here), it remains the case that the jury's verdict alone does not authorize the sentence. *The judge acquires that authority only upon finding some additional fact.*

—— U.S. at ——, 124 S.Ct. at 2538 (emphasis added). Thus, *Blakely* now holds that "by reason of the Sixth Amendment the facts bearing upon that *entitlement* must be found by a jury," unless admitted by the defendant or waived by the parties. *Id.* at 2540 (emphasis added). Because of our disposition on the various sentencing factors here, we do not address whether *all* aggravating factors upon which a judge relies in imposing an aggravated sentence must be submitted to a jury or whether only the minimum number

that provide "entitlement" to the trial judge to sentence above the statutory maximum must be so submitted.[3]

■ ¶ 8 In this case, appellant received a super-aggravated sentence under A.R.S. § 13–702.01(A) based on "the violent nature of the facts," the trauma and injuries caused to the victim, the victim's age, and appellant's lack of remorse. All of these facts were found by the court (applying a preponderance standard), not by a jury (applying a beyond a reasonable doubt standard). Thus, there was *Blakely* error in this case.

¶ 9 Neither party requested that a jury determine the aggravators beyond a reasonable doubt. Nonetheless, *Blakely* applies here because this case was still pending when *Blakely* was decided. *See Griffith v. Kentucky,* 479 U.S. 314, 322–24, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987) (holding that newly announced constitutional rules must be applied to cases that are not yet final); *State v. Wilson,* 207 Ariz. 12, 17, ¶ 18, 82 P.3d 797, 802 (App.2004) ("[A] supreme court opinion generally applies to any cases that are pending at the time the opinion is filed."). As we discuss below, the issue *Blakely* presents may constitute fundamental error depending on the circumstances of the case. *Infra* ¶ 15 (citing cases holding that we review for fundamental error regardless of an objection in the trial court). We now turn to *Blakely* error in general and in this case in particular.

## III.

¶ 10 We must first consider whether *Blakely* error is (1) structural error that requires mandatory reversal regardless of the impact of the error on the particular proceedings at issue or (2) trial error that is subject to a harmless error or fundamental error analysis before determining whether or

---

3. For instance, in a case such as this, if two factors had either been found by a jury, or the failure of such a finding could be determined to be harmless, the question is whether a judge's reliance upon additional factors is still subject to *Blakely's* requirement. Because we can only say that the *Blakely* error as to *one* of the substantial aggravating factors was harmless in this case (and two were required per A.R.S. § 13–701.01(A)), we need not decide that issue here.

*See infra* ¶¶ 45–46. This issue was addressed in *State v. Martinez,* 209 Ariz. at 284, ¶ 16, 100 P.3d at 34, ¶ 16 (App.2004) and *State v. Conn,* 209 Ariz. 195, 198, ¶ 12, 98 P.3d 881, 884, ¶ 12 (App.2004) ("Once authorized to sentence within the statutory range for aggravated sentences, the facts 'legally essential to the punishment' have been found. Other factors in aggravation or mitigation may then be considered.") (quoting *Blakely,* —— U.S. at ——, 124 S.Ct. at 2543).

not reversal is required. As the concepts of structural error, trial error, fundamental error, and harmless error are critical to our analysis, we first set forth the definitions we employ.

### A.

■ ¶ 11 As our supreme court explained in *State v. Ring*, 204 Ariz. 534, 65 P.3d 915 (2003) ("*Ring III* "), "structural errors 'deprive defendants of "basic protections" without which a "criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence . . . and no criminal punishment may be regarded as fundamentally fair." ' " *Id.* at 552, ¶ 45, 65 P.3d at 933 (quoting *Neder v. United States*, 527 U.S. 1, 8–9, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) (quoting *Rose v. Clark*, 478 U.S. 570, 577–78, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986))). When structural error occurs, we automatically reverse the judgment. *Id.* at 552, ¶ 45, 65 P.3d at 933. No consideration is given to the factual setting and whether the error may or may not be harmless. Structural error requires reversal.

■ ¶ 12 There are "relatively few instances in which we should regard error as structural." *Id.* at 552, ¶ 46, 65 P.3d at 933. (providing a listing of errors that constitute structural error). Our supreme court, in identifying the particular circumstances that constitute structural error, has held that "[i]n all those instances, the error infected 'the entire trial process' from beginning to end." *Id.* at 553, ¶ 46, 65 P.3d at 934. (quoting *Neder*, 527 U.S. at 8, 119 S.Ct. 1827). Thus, the critical inquiry for structural error is whether " 'the entire trial process' from beginning to end" has been affected. *Id.*

■■ ¶ 13 The direct contrast to structural error is trial error. This is error that is subject to either a harmless error analysis, if an objection was made at trial, or to a fundamental error analysis, if no objection was made at trial. "Most errors that we consider on appeal, even those involving constitutional error, constitute trial errors, 'which occur[ ] during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of oth-

er evidence presented.' " *Id.* at 552, ¶ 45, 65 P.3d at 933 (quoting *Arizona v. Fulminante*, 499 U.S. 279, 307–08, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991)). When the only errors present are trial error, we do not automatically reverse the judgment as we do with structural error. We consider whether the error affected the judgment and we affirm the judgment of the trial court if the error was harmless beyond a reasonable doubt. *Id.* Though standards for trial error are sometimes employed interchangeably, we consider trial error in two broad categories. First, trial error to which an objection is made at trial is subject to a harmless error analysis. Second, trial error to which no objection is made at trial is subject to a review for fundamental error.

■ ¶ 14 While the question of structural versus trial error concerns whether an error is automatically reversible, harmless error analysis or fundamental error analysis asks *whether* a trial error requires reversal. "Error is harmless only if we can say, beyond a reasonable doubt, that it 'did not contribute to or affect the verdict.' Put another way, the proper inquiry is 'whether the guilty verdict actually rendered . . . was surely unattributable to the error.' " *State v. Green*, 200 Ariz. 496, 501, ¶ 21, 29 P.3d 271, 276 (2001) (quoting *State v. Bible*, 175 Ariz. 549, 588, 858 P.2d 1152, 1191 (1993)). Error may be harmless even if it is constitutional error. *Bible*, 175 Ariz. at 588, 858 P.2d at 1191 ("Error, *be it constitutional or otherwise*, is harmless if we can say, beyond a reasonable doubt, that the error did not contribute to or affect the verdict.") (emphasis added).

¶ 15 Fundamental error analysis presents a similar inquiry to that of harmless error. As mentioned, we generally apply fundamental error analysis when an objection was not raised at trial or otherwise preserved for our review. *See, e.g., State v. Kayer*, 194 Ariz. 423, 430, ¶ 18, 984 P.2d 31, 38 (1999) ("Because no objection was made . . . at trial, we review the claim only for fundamental error."); *Bible*, 175 Ariz. at 572, 858 P.2d at 1175 ("Absent fundamental error, a party usually cannot raise error on appeal unless a proper objection was made a[sic] trial. . . .

'Only fundamental error ... may be raised for the first time on appeal.' ") (quoting *State v. Holder*, 155 Ariz. 83, 85, 745 P.2d 141, 143 (1987)).

¶ 16 Fundamental error is "error going to the foundation of the case, error that takes from the defendant a right essential to his defense, and error of such magnitude that the defendant could not possibly have received a fair trial." *State v. Hunter*, 142 Ariz. 88, 90, 688 P.2d 980, 982 (1984).[4] Critically, a determination of whether error is fundamental is case-specific and based on the particular record of the case. *Bible*, 175 Ariz. at 572, 858 P.2d at 1175. The inquiry is "fact intensive." *Id.* Because of this, "the same error may be fundamental in one case but not in another." *Id.* We emphasize this key point:

> Fundamental error, of course, does not occur in the abstract. After determining that *an error* occurred at trial, "the prejudicial nature of the unobjected-to error must be evaluated in light of the entire record" before the error can be labeled as fundamental.

*State v. King*, 158 Ariz. 419, 424, 763 P.2d 239, 244 (1988) (quoting *State v. Thomas*, 130 Ariz. 432, 436, 636 P.2d 1214, 1218 (1982)).

¶ 17 Thus, the *inquiry* as to whether error is fundamental is similar to the *inquiry* as to whether error is harmless: an error is first identified and then a determination is made as to whether it is either fundamental or harmless. However, once error is determined to be *fundamental*, "[b]y definition,

fundamental error cannot be harmless error."[5] *Bible*, 175 Ariz. at 572, 858 P.2d at 1175; *King*, 158 Ariz. at 424 n. 4, 763 P.2d at 244 n. 4 (1988) ("[A] harmless error is not fundamental."). Fundamental error is error that is "curable only via a new trial." *State v. Gendron*, 168 Ariz. 153, 155, 812 P.2d 626, 628 (1991).

¶ 18 Even though we consider that error found to be fundamental cannot be harmless, another key concept is that fundamental error is *not* equivalent to structural error. To summarize from the cases above, the principal differences between fundamental error and structural error are these. To determine whether error is fundamental we examine the facts of the case and analyze the role of the error as applied to the particular case. *King*, 158 Ariz. at 424, 763 P.2d at 244. For structural error, having initially discovered the error, we do not examine the facts further but reverse automatically if the error is present. *Ring III*, 204 Ariz. at 552, ¶ 45, 65 P.3d at 933. Error that is fundamental in one case may not be fundamental in another; differing results may occur in differing cases. *Bible*, 175 Ariz. at 572, 858 P.2d at 1175. However, error that is structural in one case is structural in another case and requires reversal in every case in which it is found. *Ring III*, 204 Ariz. at 552, ¶ 45, 65 P.3d at 933. Finally, if our analysis of the error shows that it is not fundamental, we engage in no further error analysis and uphold the judgment of the trial court. *Bible*, 175 Ariz. at 573–74, 858 P.2d at 1176–77. On the other hand, if we determine the error is not struc-

---

4. In the federal courts, the closest analogue to our doctrine of fundamental error is the doctrine of "plain error." According to Rule 52(b) of the Federal Rules of Criminal Procedure, "[a] plain error that affects substantial rights may be considered even though it was not brought to the court's attention." The Supreme Court has held that, under that doctrine, an appellate court can only correct an error not raised at trial if there is error that is plain and that affects substantial rights, and the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Johnson v. United States*, 520 U.S. 461, 466–67, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997).

5. Our analysis of fundamental error tracks that of the Arizona Supreme Court in *Bible* and *King*. As the Arizona Supreme Court noted in *King*,

"[w]e recognize that some of this court's decisions have bifurcated the fundamental error analysis into a fundamentalness aspect and a harmlessness aspect. *See Thomas*, 130 Ariz. at 436 n. 1, 636 P.2d at 1218 n. 1. Thus, some decisions have first found error, labeled it fundamental, and then applied the harmless error analysis. *See, e.g., State v. Henley*, 141 Ariz. 465, 468–69, 687 P.2d 1220, 1223–24 (1984); *State v. Sorrell*, 132 Ariz. 328, 330, 645 P.2d 1242, 1244 (1982); *State v. Anderson*, 110 Ariz. 238, 241, 517 P.2d 508, 511 (1973); *State v. Shing*, 109 Ariz. 361, 365, 509 P.2d 698, 702 (1973)." 158 Ariz. at 424 n. 4, 763 P.2d at 244 n. 4 (1988). Because we believe the analytical framework from *Bible* and *King* to more clearly demonstrate the difference between fundamental error and structural error, we employ it here.

tural, we still review to determine whether the error is fundamental (if no objection at trial was made) or harmless (if an objection at trial was made). *State v. Cox,* 201 Ariz. 464, 468, ¶ 13, 37 P.3d 437, 441 (App.2002). We now turn to whether *Blakely* error is structural error that requires automatic reversal in every case or whether it is trial error subject to a fundamental error or harmless error analysis.

## B.

■ ¶ 19 In addressing the question of whether *Blakely* error is structural error, we look first to *Blakely's* predecessors, *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and *Ring v. Arizona,* 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002) ("*Ring II* ").

■ ¶ 20 The law regarding *Apprendi* error is a substantial factor in our analysis. *Blakely* error is a sub-specie *of Apprendi* error. In deciding *Blakely* the Court applied the *Apprendi* rule:

> This case requires us to apply the rule we expressed in *Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000): "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."

*Blakely,* —— U.S. at ——, 124 S.Ct. at 2536.

■ ¶ 21 Case law clearly indicates that *Apprendi* error is not structural but is trial error subject to either a fundamental error or a harmless error analysis. In *United States v. Cotton,* 535 U.S. 625, 632–33, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002), the Supreme Court held that an *Apprendi* error did not require reversal because "the error did not seriously affect the fairness, integrity, or public reputation of judicial proceedings." Utilizing the standard for structural error employed in Arizona, this is a clear delineation that *Apprendi* error is not structural error but subject to a harmless error or fundamental error analysis. If *Apprendi* error were structural, reversal would have been required.

¶ 22 The Arizona Supreme Court, relying on *Cotton,* has held that *Apprendi* error is reviewed for harmless error. *State v. Sepahi,* 206 Ariz. 321, 324 n. 3, ¶ 19, 78 P.3d 732, 735 n. 3 (2003) (citing *Cotton,* 535 U.S. at 632–33, 122 S.Ct. 1781) (stating that under the circumstances present there "any *Apprendi* error would be harmless"). Likewise, every federal circuit court has, by our research, been uniform in holding that *Apprendi* error can be reviewed for harmless error. *E.g., United States v. Perez–Ruiz,* 353 F.3d 1, 17 (1st Cir.2003) ("An *Apprendi* error is not a 'defect affecting the framework within which the trial proceeds,' but, rather, 'simply an error in the trial process itself.' ") (quoting *Fulminante,* 499 U.S. at 310, 111 S.Ct. 1246); *United States v. Friedman,* 300 F.3d 111, 127–28 (2d Cir.2002) (subjecting an alleged *Apprendi* error to harmless error review); *United States v. Henry,* 282 F.3d 242, 252 (3d Cir.2002) ("[A]n *Apprendi* error is not a structural defect, but instead, is subject to harmless or plain error analysis, depending upon the presence of an objection at trial."); *United States v. Strickland,* 245 F.3d 368, 379–80 (4th Cir.2001) (evaluating defendant's *Apprendi* claim under the plain error doctrine); *United States v. Matthews,* 312 F.3d 652, 665 (5th Cir.2002) ("*Apprendi* error is susceptible to harmless error analysis."); *United States v. Stewart,* 306 F.3d 295, 322–23 (6th Cir.2002) (evaluating *Apprendi* claim for harmless error); *United States v. Trennell,* 290 F.3d 881, 890 (7th Cir.2002) (finding *Apprendi* error harmless); *United States v. Frazier,* 280 F.3d 835, 855–56 (8th Cir.2002) (evaluating *Apprendi* claim under plain error doctrine); *United States v. Velasco–Heredia,* 319 F.3d 1080, 1085–86 (9th Cir.2003) (finding *Apprendi* error not harmless and therefore reversing); *United States v. Lott,* 310 F.3d 1231, 1240 (10th Cir.2002) (applying plain error analysis to *Apprendi* claim); *United States v. Suarez,* 313 F.3d 1287, 1293 (11th Cir.2002) ("[A]ny *Apprendi* error was harmless."); *United States v. Lafayette,* 337 F.3d 1043, 1052 (D.C.Cir.2003) ("[A]ny *Apprendi* error was harmless.").

¶ 23 Just as error under *Apprendi* is not structural, neither is *Ring* error structural.

In *Ring III*, our supreme court held that "Arizona's failure to submit [aggravating factors] to the jury does not constitute structural error." 204 Ariz. at 552, ¶ 44, 65 P.3d at 933. Instead, the court reviews those capital sentences for harmless error. *Id.* The Supreme Court subsequently denied certiorari in a capital case in which the Arizona Supreme Court identified the *Ring* error as harmless and affirmed a death sentence. *State v. Sansing,* 206 Ariz. 232, 77 P.3d 30 (2003), *cert. denied,* —— U.S. ——, 124 S.Ct. 2906, 159 L.Ed.2d 816 (2004). In a recent capital case applying *Ring III* the Arizona Supreme Court explained:

> In *Ring III,* we concluded that judicial fact-finding in the capital sentencing process may constitute harmless error if we can conclude beyond a reasonable doubt that no reasonable jury would fail to find the aggravating circumstance. 204 Ariz. at 555, 565, ¶¶ 53, 103, 65 P.3d at 936, 946. In *Schriro v. Summerlin,* —— U.S. ——, ——, 124 S.Ct. 2519, 2526, 159 L.Ed.2d 442, 453 (2004), the Supreme Court held that *Ring II* "announced a new procedural rule that does not apply retroactively to cases already final on direct review." *Ring II* errors thus appear to be trial errors that may be reviewed for harmless error.

*State v. Armstrong,* 208 Ariz. 360, 362, ¶ 6, 93 P.3d 1076, 1078 (2004). It is an appealing argument, notwithstanding the difference in the burden of proof, that as "judicial fact-finding" in the *capital* context is not structural error, "judicial fact-finding" in the *non-capital* context should also not be structural error. Though this argument has appeal, the holdings based on non-capital *Apprendi* error are even stronger than those based on *Ring* error in the capital setting. This is because the non-capital *Apprendi* error cases are based on sentencing factors found by a preponderance of the evidence (as in the case here) whereas *Ring* error cases are based upon sentencing factors found beyond a rea-

sonable doubt (which did not occur here). Though we believe the argument for harmless error review based on *Cotton,* 535 U.S. 625, 122 S.Ct. 1781, and the related cases is compelling, we wish to address the burden of proof issue further.

¶ 24 In *Sullivan v. Louisiana,* 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993), the United States Supreme Court held that a constitutionally deficient reasonable doubt instruction was structural error. *Id.* at 281–82, 113 S.Ct. 2078. After noting that most constitutional errors are amenable to harmless error analysis, the Court reasoned that when an improper burden of proof has been applied, the framework for harmless error analysis does not exist. *Id.* at 279–80, 113 S.Ct. 2078. The Court explained that, in applying harmless error review, the question that reviewing courts are called upon to consider is not what effect the error had on the jury, but what effects it had on the guilty verdict itself. *Id.* at 279, 113 S.Ct. 2078.

> The inquiry, in other words, is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in *this* trial was surely unattributable to the error. That must be so, because to hypothesize a guilty verdict that was never in fact rendered—no matter how inescapable the findings to support that verdict might be—would violate the jury-trial guarantee.

*Id.* Where no jury verdict of guilt beyond a reasonable doubt has been rendered, there has been no jury verdict within the meaning of the Sixth Amendment, so "the question whether the *same* verdict of guilty-beyond-a-reasonable-doubt would have been rendered absent the constitutional error is utterly meaningless." *Id.* at 280, 113 S.Ct. 2078. Thus, as applied to *Blakely* error, the argument is that because there was no jury verdict beyond a reasonable doubt on the aggravating factors, there is no basis for harmless error review and the error is structural.[6]

---

6. In *State v. Rossi,* 146 Ariz. 359, 368, 706 P.2d 371, 380 (1985), our supreme court also held that, because the trial court used "the wrong standard for determining and applying mitigating factors" in a capital case, the court had to vacate the sentence and remand for resentenc-

ing. While the court did not state that the error was structural, it remanded without applying harmless error analysis. We also recognize that in *State v. Johnson,* 183 Ariz. 358, 360, 903 P.2d 1116, 1118 (App.1995), we held that "it was fundamental error for the trial court not to have

¶ 25 Notwithstanding *Sullivan's* reasoning and *Apprendi's* requirement that a jury find any fact "that increases the penalty for a crime ... beyond a reasonable doubt," 530 U.S. at 490, 120 S.Ct. 2348, our review of the cases referenced above shows that courts have overwhelmingly (if not uniformly) subjected *Apprendi* error to harmless error review. *Supra* ¶ 21; *e.g., Matthews,* 312 F.3d at 661–67 (acknowledging that the trial judge found facts relating to criminal street gangs by a preponderance of the evidence but "[a]fter a careful review of the whole record, we are convinced that any rational grand jury, when presented with a proper indictment, would have charged, and any rational petit jury, when presented with a proper jury instruction, would have found [the factors] beyond a reasonable doubt"); *Stewart,* 306 F.3d at 315, 318 (acknowledging the trial judge applied "a mere preponderance standard, and not beyond a reasonable doubt," but finding the error harmless because the "uncontroverted evidence regarding drug quantity" convinced the court that the error was harmless); *United States v. Burns,* 298 F.3d 523, 544–45 (6th Cir.2002) ("Any *Apprendi* error ... is harmless."); *United States v. Garcia–Guizar,* 234 F.3d 483, 488–89 (9th Cir.2000) (evaluating *Apprendi* claim under harmless error doctrine). More importantly, two United States Supreme Court decisions lead to (if not compel) this conclusion.

¶ 26 In *Neder v. United States,* 527 U.S., 1, 19–20, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999), the Court held that the trial court's failure to instruct the jury on an element of a charge was not structural error but should be reviewed as trial error. The Court stated: "Unlike such defects as the complete deprivation of counsel or trial before a biased judge, an instruction that omits an element of the offense does not *necessarily* render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence." *Id.* at 9, 119 S.Ct. 1827. The Court added that, while "the court erroneously

failed to charge the jury on the element of materiality," that error did not render the trial "fundamentally unfair," because the defendant "was tried before an impartial judge, under the correct standard of proof and with the assistance of counsel; [and] a fairly selected, impartial jury was instructed to consider all of the evidence and argument in respect to [the defendant's] defense against the tax charges." *Id.* Utilizing the framework for structural error described above, *Sullivan* holds that an error in the instruction on reasonable doubt pertaining to the *entire case* results in structural error, while *Neder* holds that the failure to instruct at all on one element is not structural error when the jury is otherwise properly instructed.

¶ 27 In *Neder,* the defendant made the argument for structural error based on *Sullivan. Neder,* 527 U.S. at 11, 119 S.Ct. 1827. He argued that harmless error analysis could not be applied because there was no object on which the scrutiny could operate; the proper burden of proof had not been applied to any element of the offense. *Id.* According to *Sullivan's* logic, the defendant reasoned, "where the constitutional error ... prevents the jury from rendering a 'complete verdict' on *every* element of the offense ... the basis for harmless-error review 'is simply absent.' " *Id.* (quoting Brief for Petitioner at 7, *Neder,* 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (No. 97–1985) *available at* 1998 WL 828332). The Court rejected this argument, stating that, "[a]lthough this strand of the reasoning in *Sullivan* does provide support for [the defendant's] position, it cannot be squared with our harmless-error cases." *Id.*

¶ 28 In our view, the Court's unanimous decision in *Mitchell v. Esparza,* 540 U.S. 12, 124 S.Ct. 7, 157 L.Ed.2d 263 (2003), is the linchpin in determining that error under *Blakely* and *Apprendi* presents a scenario closer to *Neder* than *Sullivan.* The rationale from *Sullivan* would lead toward a conclusion that *Apprendi* or *Blakely* error is struc-

submitted [an A.R.S. § 13–604(R) question] to the jury." In that case, however, the State asked to have the sentence vacated and did not contest the need for resentencing. *Id.* Further, as specified herein, *Johnson* was based on a question of

fundamental error, not structural error, and fundamental error is premised upon a particularized analysis of the facts in the case at hand. *See supra* ¶¶ 14–17.

tural because an incorrect burden of proof was applied to the aggravating factors. The rationale from *Neder*, on the other hand, would lead to a conclusion that *Apprendi* or *Blakely* error is subject to harmless error analysis as long as the jury's verdict on the other elements of the offense submitted to it were found beyond a reasonable doubt.

¶ 29 The Court held in *Mitchell* as follows:

In noncapital cases, we have often held that the trial court's failure to instruct a jury on all of the statutory elements of an offense is subject to harmless-error analysis. In *Neder*, for example, we held that such an error "differs markedly from the constitutional violations we have found to defy harmless-error review." In so holding, *we explicitly distinguished Sullivan because the error in Sullivan—the failure to instruct the jury that the State must prove the elements of an offense beyond a reasonable doubt—" 'vitiated all the jury's findings,' " whereas, the trial court's failure to instruct the jury on one element of an offense did not.* Where the jury was precluded from determining only one element of an offense, we held that harmless-error review is feasible.

124 S.Ct. at 11 (emphasis added). *Mitchell* thus distinguished between *Sullivan's* failure to provide a proper burden of proof on *every* element and *Neder's* failure to provide that proper burden of proof as to *one* element. We find this distinction between *Neder* and *Sullivan* to be significant. *Blakely* error is much more akin to the error in *Neder* than the error in *Sullivan*. In the case of *Blakely* error, the defendant's sentence is aggravated based on facts found by the judge using a preponderance of the evidence standard. This is now certainly error. However, the defendant has already had a trial in which a jury has determined beyond a reasonable doubt that he or she is guilty of an offense. *Blakely* error is certainly closer to failing to properly instruct on *one element* of an offense (which casts doubt on that one element) than it is to failing to properly instruct on the burden of proof as to *every element* of the offense (which casts doubt on the entire verdict).

¶ 30 As the United States Supreme Court and the Arizona Supreme Court have affirmed, structural error is error which has "infected 'the entire trial process' from beginning to end." *Ring III*, 204 Ariz. at 553, 65 P.3d at 934 (quoting *Neder*, 527 U.S. at 8, 119 S.Ct. 1827); *Brecht v. Abrahamson*, 507 U.S. 619, 629, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (stating that structural defects in the trial defy harmless error standards). *Blakeley* error is the failure to submit the facts to a jury that are necessary to entitle a judge to impose a sentence beyond the statutory maximum. *Blakely*, —— U.S. at ——, 124 S.Ct. at 2537. *Blakely* error does not infect the trial "from beginning to end ." Rather, it pertains only to that portion of the judgment upon which the aggravated sentence is based. Thus, rather than being structural error under *Sullivan*, it becomes a question appropriate for fundamental error or harmless error analysis under *Neder* and *Mitchell*. A court should consider the elements that were found by the jury, the evidence that supports them, the evidence relied upon by the judge at sentencing, and all other pertinent factors in determining whether the *Blakely* error was harmless or fundamental. These are critical inquiries and may mandate reversal based on the *Blakely* error. They do not, however, convert *Blakely* error into structural error requiring reversal in every instance regardless of its impact on the case at hand. It is an individualized inquiry.

¶ 31 Nor do we, in analyzing *Blakely* error for harmless error, overstep the role of the court in ensuring the right to a jury trial. As the Court explained in *Neder*, "[a] reviewing court making this harmless-error inquiry does not ... 'become in effect a second jury to determine whether the defendant is guilty.' " 527 U.S. at 19, 119 S.Ct. 1827 (quoting R. Traynor, *The Riddle of Harmless Error* 21 (1970)). Rather, the Court explained, "a court, in typical appellate-court fashion, asks whether the record contains evidence that could rationally lead to a contrary finding *with respect to the omitted element*. If the answer to that question is 'no,' holding the error harmless does not 'reflec[t] a denigration of the constitutional rights involved.' " *Id.* (emphasis added) (quoting *Rose*, 478 U.S. at 577, 106 S.Ct. 3101). The

"omitted element" present here was a jury finding of "at least two substantial aggravating factors listed in section 13–702." A.R.S. § 13–702.01(A). The jury found beyond a reasonable doubt each fact required to impose a one-year sentence. The failure to instruct on (or submit to the jury) an element of the offense necessary to impose the aggravated sentence may or may not require reversal depending upon the facts of the case. This is a classic description of a harmless or fundamental error analysis that appellate courts have long employed without infringement upon the right to a jury trial. *Chapman v. California*, 386 U.S. 18, 23, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) (stating "our prior cases have indicated that there are some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error" while acknowledging that "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt").

¶ 32 Holding that *Blakely* error is not structural also comports with the basic premise that adding a category of structural error to those enumerated in *Ring III* should be done with great care. *See Rose*, 478 U.S. at 579, 106 S.Ct. 3101, overruled in part on other grounds; *Abrahamson*, 507 U.S. 619, 113 S.Ct. 1710 ("[I]f the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other errors that may have occurred are subject to harmless-error analysis."); *Delaware v. Van Arsdall*, 475 U.S. 673, 681, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986) (delineating limits to the "automatic reversal rule" that accompanies certain types of error); *State v. Hickman*, 205 Ariz. 192, 198, ¶ 29, 68 P.3d 418, 424 (2003) ("Virtually any error, under particular

circumstances, can be harmless.") (quoting *State v. Harrison*, 195 Ariz. 1, 6, ¶ 21, 985 P.2d 486, 491 (1999)). This rule of exercising great caution before adding a category to the list of structural error is particularly applicable when our supreme court has already identified that *Apprendi* error is subject to a harmless error analysis, *Sepahi*, 206 Ariz. at 324 n. 3, ¶ 19, 78 P.3d at 735 n. 3, and *Blakely* error is at its core another form of *Apprendi* error based on the application of that rule. *See Blakely*, —— U.S. at ——, 124 S.Ct. at 2536.

¶ 33 We note too that other courts, since *Blakely*, have also applied a harmless error analysis to *Blakely* violations.[7] *United States v. Mincey*, 380 F.3d 102, 105 (2d Cir. 2004) (reviewing *Blakely* violation for harmless error); *State v. McDonald*, 136 N.M. 417, 419, 99 P.3d 667, 669 (2004) ("[E]rror in failing to instruct the jury on an element, even constitutional error founded on *Apprendi*, is subject to an analysis for harmless error."); (*People v. Butler*, 122 Cal.App.4th 910, 19 Cal.Rptr.3d 310, 316 (2004) (reviewing *Blakely* violation for harmless error)); *State v. Stinson*, No. E2003–01720–CCA–R3–CD, 2004 WL 1698203, at *8 (Tenn.App. July 29, 2004) (same); *State v. King*, 372 N.J.Super. 227, 245–246, 858 A.2d 4, 15–16 (Ct.App. Div.2004) (same). Though we have discovered two cases to the contrary, they are either based directly on local state law not applicable here, *State v. Speight*, 602 S.E.2d 4 (N.C.Ct.App.2004)[8], or out-of-step with the overwhelming majority of cases that hold *Apprendi* error is subject to a harmless error analysis. *State v. Benson*, No. M2003–02127–CCA–R3–CD, 2004 WL 2266801 (Tenn.Crim.App. Oct.8, 2004).[9] Additionally, our own court has recently held, in three separate opinions, that *Blakely* error is sub-

---

7. Consistent with Arizona Rule of Civil Procedure 28(c), we do not consider cases from other jurisdictions that we know to be designated as non-published. *Walden Books Co. v. Dept. of Revenue*, 198 Ariz. 584, 589, ¶ 23, 12 P.3d 809, 814 ("ARCAP 28(c) applies to memorandum decision from any court").

8. In *State v. Speight*, the North Carolina Court of Appeals concluded that *Blakely* error was not subject to harmless error analysis based on a North Carolina Supreme Court case directing

that errors in sentencing mandate a new sentencing hearing. 602 S.E.2d at 12.

9. In *State v. Benson*, the Tennessee Court of Appeals engaged in a brief analysis and concluded that *Blakely* error, as a type of *Apprendi* error, was a denial of an individual's right to a jury trial and was not subject to a harmless error review. 2004 WL 2266801 at *9. This cuts directly against *United States v. Cotton* and the many decisions from the federal circuit courts. *Supra* ¶¶ 21–22.

ject to harmless error review. *State v. Resendis–Felix,* 209 Ariz. 292, ¶¶ 8–10, 100 P.3d 457, ¶¶ 8–10 (App.2004)[10]; *State v. Martinez,* 209 Ariz. 280, 285, ¶ 21, 100 P.3d 30, 35, ¶ 21 (App.2004); *State v. Miranda–Cabrera,* 209 Ariz. 220, ¶ 30, 99 P.3d 35, ¶ 30 (App.2004). We emphasize, as discussed above, *supra* ¶ 18, that we still review for fundamental error even though we determine that *Blakely* error is not structural.

¶ 34 Thus, for the reasons above, we hold that *Blakely* error is trial error rather than structural error. We must decide on a case-by-case basis whether *Blakely* error is harmless or whether it is fundamental. It is to that question that we now turn.

## IV.

### A.

 ¶ 35 In considering whether error is fundamental we ask if it is "error going to the foundation of the case, error that takes from the defendant a right essential to his defense, and error of such magnitude that the defendant could not possibly have received a fair trial." *State v. Hunter,* 142 Ariz. 88, 90, 688 P.2d 980, 982 (1984). In applying this standard to *Blakely* error, the applicable standard is that enunciated by the Arizona Supreme Court in *Ring III:* "judicial fact-finding . . . may constitute harmless error if we can conclude beyond a reasonable doubt that no reasonable jury would fail to find the aggravating circumstance." *Armstrong,* 208 Ariz. at 362, ¶ 6, 93 P.3d at 1078 (citing *Ring III,* 204 Ariz. at 555, 565, ¶¶ 53, 103, 65 P.3d at 936, 946). Thus, we ask in this case if any reasonable jury, beyond a reasonable doubt, could conclude differently than the trial judge did on at least two of the aggravators.[11]

¶ 36 The trial court aggravated appellant's sentence based on five factors: (1) the violent nature of the crime, (2) the trauma and injuries caused to the victim, (3) the age of the victim, (4) appellant's lack of remorse, and (5) the statements appellant made at the time of sentencing. We consider these factors on the facts of this case and apply the *Ring III* standard.

### B.

¶ 37 Based on the unique facts of this case, we examine the aggravators of violence, trauma, and injuries to the victim together. Appellant was convicted of the lesser offense of unlawful imprisonment but not convicted of kidnaping. This procedural fact focuses our inquiry. The presence of violence (and consequently the injuries and trauma to the victim that flow from it) can be properly viewed as what differentiates the greater crime of kidnaping from the lesser crime of unlawful imprisonment. *Compare* A.R.S. § 13–1303(A) (2001) ("A person commits unlawful imprisonment by knowingly restraining another person.") *with* A.R.S. § 13–1304 (2001) (defining the crime of kidnaping as knowing restraint of the victim "with the intent to . . . inflict . . . physical injury" on the victim). The only additional element for kidnaping, as contrasted with unlawful imprisonment, is the intent to cause physical injuries to the victim.

¶ 38 The scenario created by the jury failing to convict on kidnaping in this case is nearly the same as the scenario in *Blakely.* In *Blakely,* the defendant pled guilty to the crime of second-degree kidnaping. —— U.S. at ——, 124 S.Ct. at 2534. The trial court then sentenced the defendant to a much harsher term after finding that defendant acted with deliberate cruelty. *Id.* at ——, 124 S.Ct. at 2535–36. The Court noted that the aggravating factor of deliberate cruelty was essentially the same as the element that differentiated second-degree kidnaping from

---

10. There was a concurrence in *Resendis–Felix,* asserting that *Blakely* error is not harmless error, but structural. The majority in *Resendis–Felix,* felt "constrained" by *Ring III* to reach the result that it did. *Id.* at ¶ 10. Even without *Ring III* (which we believe correctly assesses *Apprendi* error as subject to a harmless error analysis), *Blakely* error does not qualify as structural error. *Supra* ¶¶ 19–32.

11. As noted earlier, we do not decide whether *all* aggravators relied upon by the judge must be considered or only the minimum number of aggravators required to "entitle" the trial court to sentence defendant within the range provided for in A.R.S. § 13–702.01(A). *See supra* ¶ 45.

first-degree kidnaping, the very charge that the defendant pled guilty to avoid. *Id.* at ——, 124 S.Ct. at 2539.

¶ 39 Having declined to convict appellant of the greater offense of kidnaping, we cannot "conclude beyond a reasonable doubt that no reasonable jury would fail to find the aggravating circumstance" of violence, injuries, and trauma to the victim upon which the trial court relied here. *See Armstrong,* 208 Ariz. at 362, ¶ 6, 93 P.3d at 1078. We recognize that a contrary argument can be made based upon the jury's finding of assault. However, because of the jury's failure to convict on the greater offense of kidnaping (with its physical injury component), we do not accept that argument on the particular facts of this case.

### C.

¶ 40 As to the aggravator of age, the evidence at trial was that the victim was seventy-three years old. That same evidence was presented as part of the presentence proceedings before the judge. This evidence was uncontested and uncontradicted. The jury, however, was not instructed to make a finding of the victim's age. Neither was age a necessary element of any offense for which appellant was convicted. Thus, it was not implicit in the jury's verdicts.

¶ 41 Our law expressly provides that whether "the victim of the offense is sixty-five or more years of age" is an aggravating circumstance. A.R.S. § 13–702(C)(13). Applying the standard from *Ring III,* we have no difficulty in concluding that on the record in this case no reasonable jury could have concluded differently than the trial judge concluded had the jury been instructed on age. This is so even though a finding of age is not implicit in the jury's verdict. The *Blakely* error as to this aggravator was harmless.

### D.

¶ 42 As to the aggravators of lack of remorse and statements by the defendant, we treat them as one aggravator based on the facts of this case. It is the statements by appellant that form the basis for the lack of remorse. Those statements acknowledge the fight and detention that formed the basis for the assault and unlawful detention.

¶ 43 At the sentencing hearing, appellant placed the blame on his seventy-three-year-old mother for the assault and unlawful detention he inflicted upon her. This is not a circumstance in which a defendant has remained silent. Thus, we need not consider whether the Fifth Amendment's right to silence precludes the use of lack of remorse as an aggravator. *See State v. Carriger,* 143 Ariz. 142, 162, 692 P.2d 991, 1011 (1984) ("A defendant is guilty when convicted and if he chooses not to publicly admit his guilt, that is irrelevant to a sentencing determination."); *State v. Hardwick,* 183 Ariz. 649, 656, 905 P.2d 1384, 1391 (App.1995) ("[I]t would be irrational or disingenuous to expect or require one who maintains his innocence to express contrition or remorse."); *but see State v. McDonald,* 156 Ariz. 260, 263–64, 751 P.2d 576, 579–80 (App.1987) (distinguishing cases based on refusal to admit guilt and approving the use of "defendant's perjurious testimony as an aggravating circumstance" and "evidence of a total and complete unrepentance and lack of desire to change"); *State v. Lask,* 135 Ariz. 612, 614, 663 P.2d 604, 606 (App.1983) ("[I]t has been held that there is no fifth amendment violation in a trial court considering at sentencing a defendant's failure to confess to crimes of which he has been convicted."). This is a case where the trial judge affirmatively considered the defendant's own statements made to her at sentencing as a basis for finding a lack of remorse. *See State v. Greene,* 192 Ariz. 431, 441, ¶ 40, 967 P.2d 106, 116 (1998) ("We agree that the statements [of defendant] constitute bragging and show a tremendous lack of remorse.").

¶ 44 Thus, there is clearly evidence to *support* the trial judge's use of lack of remorse as an aggravator in this particular factual setting. That, however, is not the standard before us. The standard is whether, beyond a reasonable doubt, "no reasonable jury would fail to find the aggravating circumstance." *Armstrong,* 208 Ariz. at 362, ¶ 6, 93 P.3d at 1078; *Ring III,* 204 Ariz. at 565, ¶ 103, 65 P.3d at 946. Here, appellant also

told the judge "I never meant to hurt anybody or anybody's feelings." On this factual record, and given the jury's failure to find on the kidnaping count that the detention was done "with the *intent* to ... inflict ... physical injury," A.R.S. § 13–1304(A)(3) (emphasis added), we cannot say that the *Ring III* standard has been met on this aggravating circumstance.

### E.

¶ 45 As discussed above, we determine that a jury could have reasonably concluded differently than the trial judge concluded on four of the five factors. This leaves only one substantial aggravating factor when two were required by statute to authorize the sentence imposed. A.R.S. § 13–702.01(A). Thus, the *Blakely* error here was not harmless.

¶ 46 Because we do not find at least two substantial aggravating factors would have been found by the jury, had they been so instructed, we do not address the issue of whether *Blakely* error is harmless as a matter of law (or simply not present) when a trial judge relied upon additional, unnecessary aggravating factors beyond the minimum required by statute. Thus, we do not decide whether *all* aggravators relied upon by the judge must be considered, or whether the jury must find (and we need consider) only the minimum number of aggravators required to "entitle" the judge to sentence within a sentencing range above the statutory maximum. *See Blakely*, —— U.S. at ——, 124 S.Ct. at 2540 (referencing "facts bearing upon that *entitlement*") (emphasis added); *see also Harris v. United States*, 536 U.S. 545, 549, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002) ("Yet not all facts affecting the defendant's punishment are elements. After the accused is convicted, the judge may impose a sentence within a range provided by statute, basing it on various facts relating to the defendant and the manner in which the offense was committed. Though these facts may have a substantial impact on the sentence, they are not elements, and are thus not subject to the Constitution's indictment, jury, and proof requirements."); *Apprendi*, 530 U.S. at 482 n. 9, 120 S.Ct. 2348; *Jones v. United States*, 526 U.S. 227, 248, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999) ("It is not, of course, that anyone today would claim that every fact with a bearing on sentencing must be found by a jury...."). In this case, the minimum required number of aggravators did not meet the *Ring III* standard and resentencing is required.

### V.

¶ 47 Our concurring colleague contends that a "trial judge's finding of aggravated sentencing factors by a preponderance of the evidence constitutes structural error." *Infra* ¶ 55. There are two primary flaws in the concurrence's analysis.[12] First, the concurrence errs in determining that the guilt phase and the sentencing phase of a case are separate proceedings for purposes of determining structural error. Second, the concurrence's analysis of structural error turns into fundamental error inquiry tied to the facts of the particular case.

### A.

¶ 48 As to treating sentencing and guilt phases as distinct phases for purposes of determining structural error, *Ring III* is instructive. There, the Arizona Supreme Court addressed an argument similar to that in the concurrence. The argument made was that the defendant had experienced a "[c]omplete denial of [the right to] trial by jury at the sentencing phase" of his capital trial. *Ring III*, 204 Ariz. at 554 n. 19, ¶ 50, 65 P.3d at 935 n. 19 (quotations omitted). Under the view that the guilt and sentencing phases of a trial are two distinct entities, the denial of the right to jury trial during sentencing would be structural error in the same way that a denial of that right during the guilt phase would be structural error. *See id.* at 566, ¶ 109, 65 P.3d at 947 (observing that

---

12. This is not to suggest that we are in agreement with other portions of the concurrence. For instance, we also believe the concurrence errs in considering the Arizona Supreme Court's determination in *Sepahi*, 206 Ariz. at 324 n. 3, ¶ 19, 78 P.3d at 735 n. 3 ("[A]ny *Apprendi* error would be harmless"), as being mere dicta. *Infra* n. 16, ¶ 61.

complete denial of right to trial by jury would constitute structural error).

¶ 49 The court responded to this argument by observing that "[a] capital trial comprises *just one trial,* divided into guilt and sentencing phases, and has always been understood as such, both by this court and by the U.S. Supreme Court." *Id.* at 554 n. 19, ¶ 50, 65 P.3d at 935 n. 19 (emphasis added).[13] The court went on to state that the lack of a jury in the sentencing phase of the trial should not be viewed in isolation. Despite potentially having a large impact on the sentencing phase, the denial of the right to jury trial was not structural error because it "did not render the *entire trial* fundamentally unfair." *Id.* at 554, ¶ 50, 65 P.3d at 935 (emphasis added). The same is true with regard to the burden of proof as applied to the portions of the trial that took place in the guilt phase and the portions that took place in the sentencing proceeding.

¶ 50 The concurrence also cites to three United States Supreme Court decisions to support its position that guilt and sentencing phases should be considered separately for purposes of determining structural error. *Infra* ¶ 62. The cited cases, however, are not in the context of structural error and do not advance the concurrence's conclusion that for purposes of structural error analysis we should treat sentencing and guilt separately.[14] The two federal circuit court cases cited, *infra* ¶ 62, either do not directly analyze whether the error should be subject to

harmless error analysis as contrasted with structural error analysis, *U.S. v. Mohammad,* 53 F.3d 1426, 1439 (7th Cir.1995) (finding that the determination of restitution by a probation officer as contrasted with a federal district judge was a "structural defect"), or constitute dicta not necessary to decide the issue. *United States v. Salemo,* 61 F.3d 214, 222 (3rd Cir.1995) (Alito, J., concurring) (finding the majority's decision to "decline to engage in a harmless error analysis" dictum as it was not briefed and is contrary to other Supreme Court decisions). If viewed as stating a new standard for the determination of structural error they are contrary to the United States Supreme Court's and the Arizona Supreme Court's determination that structural error is that which has "infected 'the entire trial process' from beginning to end." *Ring III,* 204 Ariz. at 553, 65 P.3d at 934 (quoting *Neder,* 527 U.S. at 8, 119 S.Ct. 1827).

¶ 51 Thus, the concurrence's approach of considering the guilt phase and the sentencing phase to be separate proceedings for purposes of determining structural error is not appropriate.

**B.**

¶ 52 The concurrence also inappropriately mixes the definitions of structural error and fundamental error in coming to its conclusions. The concurrence attempts to distinguish *United States v. Cotton,* and, indeed

---

13. We recognize that *Ring III* was a capital case and this is not. There may be instances in which that distinction makes a difference, *see, e.g., Martinez,* 209 Ariz. at 285, ¶ 19, 100 P.3d at 35, ¶ 19, but we see no meaningful basis to consider that guilt and sentencing phases constitute "one trial" for a capital case and do not for a non-capital case for determining whether structural error is present.

14. The first case cited is *Blakely* itself. *Blakely* does not set the stage for separating guilt from sentencing. Rather, it requires generally that sentencing factors that increase the statutory range of punishment be subject to the same requirements as elements at trial. —— U.S. at ——, 124 S.Ct. at 2537. This would argue for a unitary, rather than a bifurcated approach, in determining structural error. The concurrence also cites to *Presnell v. Georgia,* 439 U.S. 14, 99 S.Ct. 235, 58 L.Ed.2d 207 (1978). In that case, the

Court observed that due process considerations apply to the sentencing phase of a capital trial in the same manner that they apply to the guilt phase. *Presnell,* 439 U.S. at 16, 99 S.Ct. 235. But the Court in *Presnell* did not state that the phases should be analyzed independently. The third cited case is *Bozza v. United States,* 330 U.S. 160, 67 S.Ct. 645, 91 L.Ed. 818 (1947). In *Bozza,* the main issue was the legality of modifying a sentence. The defendant had originally been sentenced to imprisonment and the trial court later imposed fines in addition to the term of imprisonment. The Court held that the addition of the fines to the defendant's sentence did not constitute double jeopardy. 330 U.S. at 166, 67 S.Ct. 645. The Court's analysis supports the idea that a sentence should be analyzed separately from the verdict, but the analysis does not support the conclusion that certain sentencing errors should be termed "structural errors" which mandate resentencing.

the unanimous result from all federal circuits on the issue of harmless error, by reference to the individual facts of each case. *Infra* ¶¶ 61, 63. The concurrence contends that in each case the evidence was uncontested or implicit in the verdict. *Id.* In terms of a structural error analysis, this begs the question. As discussed above, whether a fact was contested or not has no bearing on whether the error upon which it was based is structural; reversal is automatically required when structural error is present. *Supra* ¶¶ 11, 18.

¶ 53 On the other hand, fundamental error is an *individualized* inquiry. As noted in *Bible*, and set forth at length above, *supra* ¶¶ 15–18, fundamental error analysis is "fact intensive" and "the same error may be fundamental in one case but not in another." 175 Ariz. at 572, 858 P.2d at 1175. Thus, the fact that "[a]ppellant contested the error-infected sentencing issues" does not turn this into a structural error case as the concurrence asserts. *Infra* ¶ 64. Rather, these are considerations to take up in deciding whether the error was *fundamental.* In this particular case, those contested facts produced a result where the error here was indeed fundamental. But the weight of the individual facts in a particular case does not change *fundamental* error into *structural* error. *Supra* ¶ 30.

## VI.

¶ 54 For the foregoing reasons, we vacate appellant's sentence and remand for resentencing consistent with this opinion.

CONCURRING: JON W. THOMPSON, Presiding Judge.

WEISBERG, Judge, concurring.

¶ 55 I conclude that the trial judge's finding of aggravated sentencing factors by a preponderance of the evidence constitutes structural error. Therefore, although I concur in the result reached by the majority, I respectfully disagree with their reasoning.

¶ 56 Structural error is a defect in the "constitution of the trial mechanism" rather than simply an error in the trial process. *Sullivan v. Louisiana,* 508 U.S. 275, 281, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993). The United States Supreme Court has applied structural error in a limited class of cases because very few constitutional errors vitiate the basic protections of a criminal trial. See *Arizona v. Fulminante,* 499 U.S. 279, 306–07, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). *See also Johnson v. United States,* 520 U.S. 461, 468, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997) (citing *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (complete denial of counsel); *Tumey v. Ohio,* 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927) (biased trial judge); *Vasquez v. Hillery,* 474 U.S. 254, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986) (racial discrimination in selection of grand jury); *McKaskle v. Wiggins,* 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984) (denial of self-representation at trial); *Waller v. Georgia,* 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984) (denial of public trial); *Sullivan,* 508 U.S. 275, 113 S.Ct. 2078 (erroneous reasonable-doubt instruction to jury)). Consequently, those constitutional violations that have little, if any, effect upon the jury's judgment are reviewable for harmless error. See, *e.g., Rushen v. Spain,* 464 U.S. 114, 117–19 and n. 2, 104 S.Ct. 453, 78 L.Ed.2d 267 (1983) (denial of defendant's right to be present at trial subjected to harmless error).

¶ 57 On the other hand, structural error is appropriately applied to those constitutional errors that "deprive defendants of 'basic protections' without which 'a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence ... and no criminal punishment may be regarded as fundamentally fair.' " *Neder v. United States,* 527 U.S. 1, 8, 9, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) (quoting *Rose v. Clark,* 478 U.S. 570, 577–78, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986)). The leading structural error case is *Sullivan,* which I find to be similar to the instant case. In *Sullivan,* a defective "reasonable doubt" instruction violated the defendant's Fifth and Sixth Amendment rights to have the charged offense proved beyond a reasonable doubt. 508 U.S. at 280, 113 S.Ct. 2078. The Supreme Court concluded that such error was not subject to harmless-error analysis because it "vitiates *all* the jury's findings," *id.* at 281, 113 S.Ct. 2078, and produces "consequences that are necessarily unquantifiable and indeterminate," *id.* at 282, 113 S.Ct. 2078.

¶ 58 In our case, there were two constitutional errors. First, similar to the jury-related error in *Sullivan*, the trial judge here found sentence-related facts under a burden of proof less than beyond a reasonable doubt, in violation of the Fifth and Sixth Amendments. Second, the judge meted out an aggravated sentence based on facts not decided by the jury, in violation of the Sixth Amendment requirement that the maximum sentence allowed for an offense be that which is based solely on the facts reflected in the jury's verdict. *Blakely v. Washington,* — U.S. ——, —— – ——, 124 S.Ct. 2531, 2536–38, 159 L.Ed.2d 403 (2004). The issue before us, then, is whether the combination of these constitutional errors constitute structural error. I conclude that they do.

¶ 59 Clearly, the use of a lesser burden of proof in the sentencing phase is the equivalent of the use of a lesser burden of proof in the guilt phase. However, while the majority recognizes the seriousness of this error, *see* ¶ 23, it likens the error here to the error in *Neder* and concludes that harmless error review is proper because the subject error "is certainly closer to failing to properly instruct on *one element* of an offense (which casts doubt on that one element) than it is to failing to properly instruct on the burden of proof as to *every element* of the offense (which casts doubt on the entire verdict)." With that conclusion, I disagree.

¶ 60 In *Neder,* the error was the failure to instruct the jury on one element of the crime charged. The Court noted, however, that the defendant had not contested that element at trial. Furthermore, the defendant did not even suggest that at retrial he would introduce any evidence bearing on materiality. The Court declined to extend the reasoning of *Sullivan* because the subject constitutional error would not have been contested upon

retrial. Instead, such a retrial would focus only on those contested issues that had not been infected by error. *Neder,* therefore, stands for the proposition that an uncontested, isolated error that would not change the verdict is subject to harmless error review rather than automatic structural error reversal. The *Neder* court clearly stated its reasons for this practical approach.

> It would not be illogical to extend the reasoning of *Sullivan* from a defective 'reasonable doubt' instruction to a failure to instruct on an element of the crime. But, as indicated in the foregoing discussion, the matter is not *res nova* under our case law. And if the life of the law has not been logic but experience, see O. Holmes, The Common Law 1 (1881), we are entitled to stand back and see what would be accomplished by such an extension in this case. The omitted element was materiality. Petitioner underreported $5 million on his tax returns, and did not contest the element of materiality at trial. Petitioner does not suggest that he would introduce any evidence bearing upon the issue of materiality if so allowed. Reversal without any consideration of the effect of the error upon the verdict would send the case back for retrial-a retrial not focused at all on the issue of materiality, but on contested issues on which the jury was properly instructed. We do not think the Sixth Amendment requires us to veer away from settled precedent to reach such a result.

527 U.S. at 15, 119 S.Ct. 1827.

¶ 61 This practical approach also explains the subsequent federal circuit court cases cited by the majority.[15] Those cases may be described as fitting into one of two categories. In the first group, consisting primarily of drug cases, the jury heard the evidence at trial, yet failed to make a specific finding.[16]

**15.** See, e.g., *United States v. Perez–Ruiz,* 353 F.3d 1, 17 (1st Cir.2003); *United States v. Friedman,* 300 F.3d 111, 127–28 (2d Cir.2002); *United States v. Henry,* 282 F.3d 242, 252 (3rd Cir.2002); *United States v. Strickland,* 245 F.3d 368, 379–80 (4th Cir.2001); *United States v. Matthews,* 312 F.3d 652, 661–67 (5th Cir.2002); *United States v. Stewart,* 306 F.3d 295, 308–26 (6th Cir.2002); *United States v. Trennell,* 290 F.3d 881, 890 (7th Cir.2002); *United States v. Frazier,* 280 F.3d 835, 855–56 (8th Cir.2002); *United States v. Velasco-*

*Heredia,* 319 F.3d 1080, 1085–86 (9th Cir.2003); *United States v. Lott,* 310 F.3d 1231, 1240 (10th Cir.2002); *United States v. Suarez,* 313 F.3d 1287, 1293–94 (11th Cir.2002); *United States v. Lafayette,* 337 F.3d 1043, 1049–50 (D.C.Cir. 2003).

**16.** *E.g., Perez–Ruiz,* 353 F.3d at 18; *Friedman,* 300 F.3d at 128; *Matthews,* 312 F.3d at 665.

Importantly, the evidence was uncontested by the defendant in those cases. *Matthews*, 312 F.3d at 665 ("evidence at trial was extensive, overwhelming, and essentially uncontradicted"). In the second group of cases, the sentence aggravating factor, though not found by the jury, was implicit in the jury's verdict. *Friedman*, 300 F.3d at 128 (jury finding beyond a reasonable doubt on one crime implicit in the guilty verdict of the other crime).[17] Thus, like *Neder*, a retrial in those cases would have focused on contested issues that had been properly tried, and would not have focused on the single issue that was infected by error.

¶ 62 In its reliance upon *Neder*, the majority mistakenly assumes that the error in this case, as in *Neder*, infected only one element among many. In doing so, the majority views the guilt and sentencing phases of a trial as being one proceeding. The appropriate approach, however, requires that the sentencing phase of the trial be reviewed as being separate from the guilt phase. *See Blakely*, 124 S.Ct. at 2538 (holding that only sentence is invalid where sentencing procedure is invalid); *Presnell v. Georgia*, 439 U.S. 14, 16–17, 99 S.Ct. 235, 58 L.Ed.2d 207 (1978) (in analyzing whether there was procedural fairness, the guilt and sentencing phases are treated as separate proceedings); *Bozza v. United States*, 330 U.S. 160, 166, 67 S.Ct. 645, 91 L.Ed. 818 (1947) (verdict not invalid if error only occurred during sentencing). Moreover, the two phases are viewed separately for purposes of structural error analysis. *See United States v. Salemo*, 61 F.3d 214, 221–22 (3rd Cir.1995)(deprivation of counsel during sentencing hearing is structural error); *United States v. Mohammad*, 53 F.3d 1426, 1438–39 (7th Cir.1995)(court abdicating judicial role during sentencing phase is structural error). Here, the reasonable doubt error infected the *entire* sentenc-

ing phase, just as the similar error in *Sullivan* infected the *entire* guilt phase.[18]

¶ 63 The majority's reliance on *United States v. Cotton*, 535 U.S. 625, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002), is also misplaced. In *Cotton*, the Court did not decide whether the indictment error was structural error. *See United States v. Jordan*, 291 F.3d 1091, 1096 (9th Cir.2002). Several co-conspirators testified at trial to the amount of drugs involved. *Cotton*, 535 U.S. at 633, 122 S.Ct. 1781. The evidence of the amount was "uncontroverted." *Id.* The Court stated that "[m]uch of the evidence implicating respondents in the drug conspiracy revealed the conspiracy's involvement with far more than" the amount necessary to enhance the sentence. *Id.* The reasoning is clearly in line with the *Neder* practical approach because a retrial would not have focused on the uncontested quantity issue that was infected by error at sentencing.

¶ 64 Unlike the cases cited for support by the majority, in the present case, Appellant contested the error-infected sentencing issues and is likely to do so again upon re-sentencing. Therefore, I conclude that this case is far closer to *Sullivan* than to *Neder*.

¶ 65 As for the *Blakely* error, I agree with the majority that, standing alone, such error would be subject to harmless error review. In reaching this conclusion, however, I do not denigrate the seriousness of a *Blakely* error in depriving the jury of its role in our system of justice. As the Supreme Court stated:

> There is not one shred of doubt, however, about the Framers' paradigm for criminal justice: not the civil-law ideal of administrative perfection, but the common-law ideal of limited state power accomplished by

---

17. The majority also unavailingly relies on dicta from a footnote in *State v. Sepahi*, 206 Ariz. 321, 324, ¶ 19 n. 3, 78 P.3d 732, 735 (2003). Like the federal circuit cases, the aggravating factor found by the judge was implicit in the verdict found by the jury beyond a reasonable doubt.

18. While both *Neder* and *Esparza* state that *Sullivan* applies only where the error "vitiates *all* the jury's findings," *Neder*, 527 U.S. at 11, 119 S.Ct. 1827; *see also Mitchell v. Esparza*, 540 U.S. 12,

124 S.Ct. 7, 11, 157 L.Ed.2d 263 (2003), in the present case, the trial court's use of the incorrect burden of proof tainted every finding on every issue in the sentencing proceeding. Proof beyond a reasonable doubt, a basic protection necessary to maintain the reliability of the sentencing process, was glaringly absent from the entire sentencing proceeding. *See Sullivan*, 508 U.S. at 281, 113 S.Ct. 2078.

strict division of authority between judge and jury.

*Blakely,* —— U.S. at ——, 124 S.Ct. at 2543.

¶ 66 Moreover, in the instant case, the *Blakely* error has exacerbated the *Sullivan* error. In *Sullivan,* the Supreme Court held that where a jury applies an incorrect reasonable doubt instruction, the verdict is unreliable because it lacks one of the basic protections of our criminal justice system, and the consequences of the error are "necessarily unquantifiable and indeterminate." *Sullivan,* 508 U.S. at 282, 113 S.Ct. 2078. The *Blakely* error in this case makes the sentencing error even more "unquantifiable and indeterminate" than the error in *Sullivan* because the trial court, rather than the jury, applied the incorrect burden of proof. If the *Sullivan* court could not determine what the jury would have done had it applied the correct burden of proof, how can we determine what the *jury* would have done had the *trial court* applied the correct burden of proof?[19] Thus, the addition of the *Blakely* error here aggravates the error that the Supreme Court found to be structural in *Sullivan.*

¶ 67 For all these reasons, I conclude that the error in this case is structural and, therefore, resentencing is required.

---

**19.** Allowing this court to substitute our judgment for that of the jury, in the circumstances of this case, is tantamount to trial by appellate court.