STATE OF NORTH CAROLINA v. TIMMY WAYNE SPEIGHT

No. COA03-776

(Filed 7 September 2004)

**1. Indigent Defendants— funds for expert witnesses—insufficient particularized showing**

The denial of funds for medical and accident reconstruction experts for a DWI and second-degree murder defendant was not error where defendant's unsupported assertions showed only a mere hope or suspicion of favorable evidence. Moreover, any alleged error in denying funds for the accident reconstruction expert was not prejudicial because defendant wanted the expert to undermine malice and the jury ultimately acquitted defendant of second-degree murder.

**2. Evidence— consumption of alcohol by driver—observations of officer**

An officer's testimony that a DWI and second-degree murder defendant had consumed sufficient alcohol to be impaired was

admissible because the officer detected the odor of alcohol in the car and on defendant's breath, observed the scene of the collision and its severity, interviewed four or five witnesses, and had been on a traffic enforcement unit for five years.

### 3. Evidence— motion to suppress—timely and sufficient— other evidence admitted

The denial of a DWI and second-degree murder defendant's motion to suppress the results of an SBI analysis of his blood samples was erroneous but not prejudicial. The State was placed on notice that defendant would seek to suppress this evidence by the inclusion of "any and all blood or breath alcohol level tests" in defendant's amended motion to suppress. Moreover, defendant was not required to file a motion to suppress prior to trial because the blood was seized as the result of a warrantless consent search and the State gave notice of its intent to use the evidence only five days prior to trial rather than the 20 days required by N.C.G.S. § 15A-975(b). However, there was no prejudice because the State introduced evidence of a separate blood analysis performed by the hospital.

### 4. Witnesses— expert—blood testing and accident reconstruction

There was no error in the admission of expert testimony from the State's accident reconstruction expert and the State's expert on blood testing analysis in a trial for DWI and second-degree murder. Both accident reconstruction and blood testing have been recognized as sufficiently reliable methods of scientific testing, and both witnesses were better qualified than the jury to form an opinion on their respective subjects.

### 5. Sentencing— aggravating factors—not found by jury— remanded

A defendant's motion for appropriate relief was granted where a jury did not decide the aggravating factors considered by the court in imposing aggravated sentences. Although the State argued harmless error, a case must be remanded for new sentencing when the trial judge errs in a finding in aggravation and imposes a sentence beyond the presumptive.

Appeal by defendant from judgments entered 30 August 2002 by Judge W. Russell Duke, Jr. in Pitt County Superior Court. Heard in the Court of Appeals 30 March 2004.

*Attorney General Roy A. Cooper, III, by Special Deputy Attorney General Isaac T. Avery, III and Assistant Attorney General Patricia A. Duffy, for the State.*

*Margaret Creasy Ciardella for defendant-appellant.*

HUNTER, Judge.

Timmy Wayne Speight ("defendant") appeals from three separate judgments dated 30 August 2002 entered consistent with a jury verdict finding him guilty of two counts of involuntary manslaughter and one count of driving while impaired ("DWI"). As a result of his convictions, defendant was given an active sentence of two consecutive prison terms, with minimum terms of twenty months and corresponding maximum terms of twenty-four months on the involuntary manslaughter convictions and an additional consecutive sentence of twelve months for the DWI conviction. For the reasons stated herein, we conclude there was no prejudicial error at trial, however, we remand for resentencing.

The State's evidence tends to show that defendant was driving a Camaro northbound on Highway 11 in Pitt County, North Carolina. Several witnesses testified that defendant was cutting in and out of heavy rush hour traffic and driving at speeds estimated between sixty and eighty miles per hour. As traffic passed through a stoplight, defendant's car cut in front of another vehicle. Defendant lost control of his vehicle, skidded across the median, hit a pole, and collided head on into a white Buick traveling in the opposite direction with such force that the Buick was flipped upside down. The collision killed both the driver of the Buick, Lynwood Thomas, and his son, Donald Thomas, a passenger in the car.

One of the responding EMS technicians testified that as he was attending to defendant in his car at the scene, the EMS technician detected the odor of alcohol. While defendant was being extracted from his vehicle, Officer M. L. Montayne ("Officer Montayne") of the Greenville Police Department, also detected a slight odor of alcohol inside the Camaro. Officer Montayne also received accounts from four or five witnesses who observed defendant's driving and the resulting collision.

Defendant was transported to a hospital via ambulance, and Officer Montayne followed. At the hospital, Officer Montayne talked with defendant and noted a moderate odor of alcohol on defendant's

breath. Based upon the severity of the collision, the witnesses' observations, and the odor of alcohol in the car and on defendant's breath, Officer Montayne reached the opinion that defendant had consumed sufficient alcohol to appreciably impair his mental and physical faculties and charged defendant with DWI.

After Officer Montayne read defendant his chemical testing rights, defendant signed a form acknowledging he understood those rights and signed a separate form consenting to giving blood samples. Defendant also subsequently signed a form consenting to the release of all of his medical records to the district attorney's office. Blood samples were taken and given to the State Bureau of Investigation ("SBI") for analysis. The SBI analysis revealed defendant had a blood alcohol level of .10 and further analysis showed the presence of THC, a chemical found in marijuana, in defendant's blood. There was also evidence that analysis of defendant's hospital records showed defendant with a blood alcohol level of .11 based on the hospital's testing. At trial, an SBI analyst gave expert testimony that he performed retroactive analysis of both the SBI blood testing and the hospital's blood testing, which would extrapolate defendant's blood alcohol level back to the time of the accident. The results of both extrapolations showed that at the time of the collision, defendant had a .13 blood alcohol level.

Defendant was indicted on two counts of second degree murder and one count of DWI. Prior to trial, defendant moved as an indigent defendant for funds to hire a medical expert and an accident reconstruction expert. The trial court denied both motions. On 21 August 2002, the State filed a motion to allow the State to use defendant's medical records, including "toxicology blood screens and other lab tests." The same day, defendant filed a motion to suppress any evidence of defendant's medical records. The following day, defendant amended his motion to suppress to expressly include a request to suppress "[a]ny and all medical records, *including but not limited to any and all blood or breath alcohol level tests*." At trial, which began on 26 August 2002, when the State sought to introduce evidence of the SBI blood test analysis, defendant objected, noting his prior motion to suppress medical records. The trial court denied the motion on the grounds that the SBI blood test was not a medical record and that the motion to suppress was not timely filed. The jury acquitted defendant of both counts of second degree murder, but found him guilty of two counts of involuntary manslaughter and one count of DWI.

The issues presented are whether (I) the trial court erred in denying defendant funds to hire experts; (II) Officer Montayne's testimony that in his opinion defendant was impaired was an improper opinion by a lay witness; (III) the trial court committed prejudicial error in denying the motion to suppress as untimely; and (IV) the trial court properly allowed the State to present expert testimony in the fields of accident reconstruction and blood testing.

I.

[1] Defendant first argues that the trial court erred in denying him funds to hire an accident reconstruction expert and a medical expert. We disagree.

"An indigent defendant's right to the assistance of an expert at state expense 'is rooted in the Fourteenth Amendment's guarantee of fundamental fairness and the principle that an indigent defendant must be given a fair opportunity to present his defense.'" *State v. Parks*, 331 N.C. 649, 655, 417 S.E.2d 467, 471 (1992) (quoting *State v. Tucker*, 329 N.C. 709, 718, 407 S.E.2d 805, 811 (1991)). In *Ake v. Oklahoma*, 470 U.S. 68, 84 L. Ed. 2d 53 (1985), the United States Supreme Court "held that when a defendant makes a preliminary showing that his sanity will likely be a 'significant factor at trial,' the defendant is entitled, under the Constitution, to the assistance of a psychiatrist in preparation of his defense." *State v. Moore*, 321 N.C. 327, 335, 364 S.E.2d 648, 652 (1988) (quoting *Ake*, 470 U.S. at 74, 84 L. Ed. 2d at 60). North Carolina courts have subsequently expanded the holding in *Ake* to instances where an indigent defendant has sought the state funded assistance of experts in areas other than psychiatry, but requiring "that such experts need not be provided unless the defendant 'makes a threshold showing of specific necessity for the assistance of the expert' requested." *Id.* (quoting *State v. Penley*, 318 N.C. 30, 51, 347 S.E.2d 783, 795 (1986)).

In *Moore*, the North Carolina Supreme Court further held that:

In order to make a threshold showing of specific need for the expert sought, the defendant must demonstrate that: (1) he will be deprived of a fair trial without the expert assistance, or (2) there is a reasonable likelihood that it will materially assist him in the preparation of his case.

*Id.* "In determining whether the defendant has made the requisite showing of his particularized need for the requested expert, the court 'should consider all the facts and circumstances known to it at the

time the motion for . . . assistance is made.' " *Id.* at 336, 364 S.E.2d at 652 (quoting *State v. Gambrell*, 318 N.C. 249, 256, 347 S.E.2d 390, 394 (1986)). "The determination of whether a defendant has made an adequate showing of particularized need lies largely within the discretion of the trial court." *State v. Brown*, 357 N.C. 382, 387, 584 S.E.2d 278, 281 (2003). "While particularized need is a fluid concept determined on a case-by-case basis, ' "[m]ere hope or suspicion that favorable evidence is available is not enough." ' " *Id.* (quoting *State v. Page*, 346 N.C. 689, 696-97, 488 S.E.2d 225, 230 (1997)). "Furthermore, 'the State is not required by law to finance a fishing expedition for the defendant in the vain hope that "something" will turn up.' " *State v. McNeill*, 349 N.C. 634, 650, 509 S.E.2d 415, 424 (1998) (quoting *State v. Alford*, 298 N.C. 465, 469, 259 S.E.2d 242, 245 (1979)).

Defendant in the case *sub judice* relies on both *Moore* and *Parks*, arguing that they are analogous to the present case. Both of those cases are, however, distinguishable. In *Moore*, the defendant moved to be provided funds from which to hire a psychiatrist in order to determine whether he was competent to waive his Miranda rights. *Moore*, 321 N.C. at 334-35, 364 S.E.2d at 651-52. The Supreme Court noted that at the motion hearing defendant made a particularized showing that:

"(1) Defendant has an IQ of 51;

(2) Defendant's "mental age" is equivalent to that of an eight or nine year old;

(3) Defendant's vocabulary is equivalent to that of a fourth or fifth grade elementary student;

(4) According to expert testimony, defendant cannot understand complicated instructions;

(5) According to family members, defendant could not understand the rights read by Detective Crawford without further explanation;

(6) According to the expert testimony, defendant is easily led and intimidated by others;

(7) According to a friend of defendant, defendant can be "run over" by "anybody";

(8) Defendant's low intelligence level may have rendered him unable to understand the nature of any statement he may have made;

STATE v. SPEIGHT

[166 N.C. App. 106 (2004)]

(9) Defendant's mental retardation may have rendered him unable to knowingly waive his rights;

(10) The state's case against defendant was predicated in significant measure on defendant's confession because G. G. could not identify her assailant."

*Id.* at 336-37, 364 S.E.2d at 652-53. The Supreme Court concluded that this evidence was sufficient to show the defendant had a particularized need for psychiatric expert assistance. *Id.* The *Moore* Court also held that the defendant in that case was entitled to funds for a fingerprint expert where the defendant made five specific verified allegations in support of his motion. *Id.* at 343-44, 364 S.E.2d at 656-57. Likewise, in *Parks*, the defendant placed nine specific facts and circumstances before the trial court, which our Supreme Court concluded were sufficient to establish that his mental health was likely to be a significant factor at trial and the assistance of an expert was reasonably likely to materially assist him in the preparation of his case. *Parks*, 331 N.C. at 657-58, 417 S.E.2d at 472-73.

In this case, with regard to his motion to hire an accident reconstruction expert, defendant alleged no specific facts or circumstances either in his written motion or in his argument before the trial court. Instead, he simply informed the trial court that he desired an accident reconstruction expert to review the State's evidence to see if there was any evidence to undermine the malice element of the second degree murder charges. This undeveloped assertion by defendant is insufficient to establish the particularized showing required to receive state funds for expert assistance. *See State v. Artis*, 316 N.C. 507, 512-13, 342 S.E.2d 847, 851 (1986). Moreover, this was not a case in which the basic facts of the incident were in dispute: defendant was weaving in and out of rush hour traffic at a relatively high rate of speed until he lost control of his car and struck the victims' vehicle head on in the opposite lane of travel. Furthermore, because the jury ultimately found that defendant had not committed second degree murder, any alleged error in the denial of an expert to assess whether defendant had acted with malice was not prejudicial.

With regard to his motion for a medical expert, defendant asserted that he needed an expert to review his medical records to determine (1) whether defendant was able to give valid consent to the blood testing and release of his medical records, and (2) what defendant's state of mind may have been at the time of the accident. Defendant admitted his assertions were "speculation." Again, defend-

ant's unsupported assertions do not establish a sufficiently particularized showing requiring a trial court to grant him state funds with which to hire an expert. They instead show only a mere hope or suspicion that favorable evidence might be turned up. Therefore, the trial court did not err in denying defendant's motions for funds to hire expert witnesses.

## II.

[2] Defendant next contends Officer Montayne's testimony that in his opinion defendant had consumed sufficient alcohol to appreciably impair his mental and physical faculties at the time of the collision was inadmissible because it was speculative and lacked a proper foundation. We disagree.

This case is squarely controlled by our Supreme Court's ruling in *State v. Rich*, 351 N.C. 386, 527 S.E.2d 299 (2000), which stated:

> "If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue."

N.C.G.S. § 8C-1, Rule 701 (1999). Additionally, it is a well-settled rule that a lay person may give his opinion as to whether a person is intoxicated so long as that opinion is based on the witness's personal observation. *State v. Lindley*, 286 N.C. 255, 258, 210 S.E.2d 207, 209 (1974).

[T]his Court has held that "an odor [of alcohol], *standing alone*, is no evidence that [a driver] is under the influence of an intoxicant." *Atkins v. Moye*, 277 N.C. 179, 185, 176 S.E.2d 789, 793 (1970). However, in that same case, this Court also stated, "the '[f]act that a motorist has been drinking, when considered in connection with faulty driving . . . or other conduct indicating an impairment of physical or mental faculties, is sufficient *prima facie* to show a violation of [N.C.G.S. §] 20-138.' " *Id.* at 185, 176 S.E.2d at 794 (quoting *State v. Hewitt*, 263 N.C. 759, 764, 140 S.E.2d 241, 244 (1965)).

*Rich*, 351 N.C. at 398, 527 S.E.2d at 305-06.

In *Rich*, the almost identical facts of an accident caused by a drunk driver resulted in the deaths of two people. The North Carolina Supreme Court upheld the admission of lay witness opinion testi-

mony by the investigating officer that the defendant was impaired. *See id.* at 398-99, 527 S.E.2d at 306. In that case, the investigating officer not only detected the odor of alcohol on defendant, but also observed the crash scene and observed the defendant at the hospital. *See id.* In addition, the officer interviewed two witnesses to the collision. *See id.*

In the case *sub judice*, Officer Montayne not only detected the odor of alcohol in the car and on defendant's breath, but as in *Rich*, observed the scene of the collision and its severity. He interviewed four or five witnesses who informed him of defendant's cutting in and out of traffic during rush hour at high speed. Moreover, Officer Montayne had been employed by the Greenville Police Department Traffic Safety Unit for five years, and that unit had exclusive responsibility over traffic enforcement in Greenville. Thus, as in *Rich*, Officer Montayne's lay opinion that defendant was impaired was sufficiently based upon his perception of defendant and his observations at the scene of the accident. Therefore, the trial court did not err in admitting this testimony.

III.

[3] Defendant next contends the trial court erred in denying his motion to suppress evidence of the results of the SBI analysis of his blood samples as untimely. We agree, but conclude that denial of this motion to suppress was not prejudicial.

The State first contends that the motion to suppress did not include any reference to the SBI analysis of blood drawn from defendant at the hospital, and thus the State had no notice defendant would seek to suppress this evidence. Defendant, however, specifically amended his pre-trial motion to suppress to include, in bold and italicized print, all medical records "including but not limited to any and all blood or breath alcohol level tests." (Emphasis omitted.) The reference to "any and all blood or breath alcohol level tests" is sufficient to put the State on notice that defendant would seek to suppress any and all blood alcohol testing performed as a result of blood samples taken during his treatment at the hospital following the accident.

Even assuming that the motion to suppress did not include the SBI test results, we nevertheless conclude that defendant's motion to suppress was not untimely even though not filed prior to trial. N.C. Gen. Stat. § 15A-975 provides that generally a motion to suppress evi-

dence in a criminal case must be filed prior to trial. *See* N.C. Gen. Stat. § 15A-975(a) (2003). Where, however, the State has failed to give notice twenty days prior to trial of its intent to use evidence seized as a result of a warrantless search, a motion to suppress may be made at trial. *See* N.C. Gen. Stat. § 15A-975(b).

In this case, blood was seized from defendant as the result of a warrantless consent search and the State did not give notice of its intent to use such evidence until five days prior to trial. Thus, defendant was not required to file a motion to suppress this evidence prior to trial. *See State v. Fisher*, 321 N.C. 19, 27, 361 S.E.2d 551, 555 (1987) (even though defendant had notice that the State had evidence of blood samples seized in a warrantless search, defendant did not have notice of the State's intent to use that evidence).

We nevertheless conclude that denial of the motion to suppress the SBI testing results on this ground did not result in prejudicial error. The State also introduced evidence of analysis performed on the blood samples by the hospital, separate from the SBI analysis. Defendant made no objection to this evidence, thus waiving any assertion of error. The analysis of the hospital testing showed defendant had a blood alcohol level of .11, which witness Glover's retroactive extrapolation to the time of the accident indicated defendant had a blood alcohol level of .13, the same as the results of the retroactive testing on the SBI analysis.[1] Thus, although the trial court erred in denying the motion to suppress on the ground that it was not timely filed, the error was harmless.[2]

## IV.

[4] Defendant next contends the trial court erred in admitting the expert testimony of the State's accident reconstruction expert and an SBI expert on blood testing analysis. Defendant contests these witnesses' expertise on two fronts. He argues first that neither witness possessed sufficient expertise in their fields, and second that the trial court failed to take into consideration the reliability of the areas of their expertise.

---

1. The extrapolation from both samples by Glover was based on the average rate that alcohol is eliminated from the human body. However, Glover also testified that defendant's actual rate of alcohol elimination was consistent with the average alcohol elimination rate.

2. We make no determination as to the substantive merits of defendant's motion to suppress this evidence, because the trial court did not make findings of fact or rule on the merits of the motion to suppress prior to summarily denying the motion on the procedural grounds addressed in this opinion.

" 'The essential question in determining the admissibility of opinion evidence is whether the witness, through study or experience, has acquired such skill that he was better qualified than the jury to form an opinion on the subject matter to which his testimony applies.' " *State v. Tyler*, 346 N.C. 187, 204, 485 S.E.2d 599, 608 (1997) (quoting *State v. Mitchell*, 283 N.C. 462, 467, 196 S.E.2d 736, 739 (1973)). Furthermore, before expert testimony, scientific or otherwise, is admitted into evidence, "the trial court must determine whether the expert's method of proof is sufficiently reliable as an area of expert testimony." *Howerton v. Arai Helmet, Ltd.*, 358 N.C. 440, 459, 597 S.E.2d 674, 686 (2004) (citing *State v. Goode*, 341 N.C. 513, 527-29, 461 S.E.2d 631, 639-40 (1995)); *see Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149, 143 L. Ed. 2d 238, 251 (1999); *State v. Berry*, 143 N.C. App. 187, 202-03, 546 S.E.2d 145, 156 (2001). The trial court is to be given flexibility in what factors to consider when determining the reliability of expert testimony. *See State v. Davis*, 142 N.C. App. 81, 89-90, 542 S.E.2d 236, 241 (2001). Absent new evidence, a trial court need not redetermine in every case the reliability of a particular field of knowledge that is consistently accepted as reliable by our Courts. *Taylor v. Abernethy*, 149 N.C. App. 263, 274, 560 S.E.2d 233, 240 (2002); *see also Howerton*, 358 N.C. at 459, 597 S.E.2d at 687. "[W]ithout discretionary authority trial courts would be unable to avoid 'reliability proceedings in ordinary cases where the reliability of an expert's methods is properly taken for granted, and to require appropriate proceedings in the less usual or more complex cases where cause for questioning the expert's reliability arises.' " *Davis*, 142 N.C. App. at 90, 542 S.E.2d at 241 (quoting *Kumho Tire Co.*, 526 U.S. at 152, 143 L. Ed. 2d at 253). Accordingly, we review the trial court's decision to admit expert testimony for an abuse of discretion. *See id.*

At the outset, we note that both accident reconstruction, *see State v. Holland*, 150 N.C. App. 457, 463, 566 S.E.2d 90, 94 (2002), and blood testing, *see State v. McDonald*, 151 N.C. App. 236, 239, 565 S.E.2d 273, 275 (2002), have been recognized by this Court as sufficiently reliable methods of scientific testing. Furthermore, both experts testified to their qualifications in their respective fields and our review of the record shows that each had acquired skills to the extent that they were better qualified than the jury to form an opinion on their respective subjects. The State's proffered accident reconstruction expert, Sergeant John Tomer, had been employed with the Highway Patrol for twenty years, had taken classes in collision investigation, and had taught approximately seven classes in accident

reconstruction. The State's blood analysis expert, Paul Glover, holds a masters degree in biology, is a research scientist and chemical specialist with the Forensic Tests for Alcohol Branch of the North Carolina Department of Health and Human Services, and is in charge of evaluating individuals who apply for a permit to conduct blood alcohol analysis. Thus, the trial court did not err in admitting this expert testimony. Accordingly, there was no prejudicial error in defendant's trial.

V.

[5] Finally, defendant has filed a motion for appropriate relief contending the trial court's imposition of a sentence in the aggravated range was done in violation of the Sixth Amendment to the United States Constitution as interpreted by *Blakely v. Washington*, —— U.S. ——, 159 L. Ed. 2d 403 (2004).

> In *Blakely*, the U.S. Supreme Court held that a trial court alone may not impose a sentence in excess of the "statutory maximum," unless either a jury's verdict finds that additional facts, or aggravating circumstances, warrant an increased sentence, or the defendant has waived his Sixth Amendment right to trial by jury. . . . [T]he "statutory maximum" for an offense is "the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" *Blakely*, U.S. at , 159 L. Ed. 2d at 413. The Court further explained "the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings." *Blakely*, —— U.S. at ——, 159 L. Ed. 2d at 413-14.

*State v. Allen*, 166 N.C. App. 139, 148, 601 S.E.2d 299, 305-06 (2004).

> Defendant received two consecutive aggravated sentences of a minimum of twenty and a maximum of twenty-four months for involuntary manslaughter and a consecutive aggravated sentence of twelve months for impaired driving. As the jury did not decide the aggravating factors considered by the trial court, defendant's Sixth Amendment right to a trial by jury was violated. *See Blakely*, —— U.S. at ——, 159 L. Ed. 2d at 412.

> Nonetheless, the State argues that under a harmless error analysis, defendant's sentences should be upheld. However, as explained in *State v. Allen*, "[o]ur Supreme Court has definitively stated that when

'the [trial] judge [has] erred in a finding or findings in aggravation and imposed a sentence beyond the presumptive term, the case must be remanded for a new sentencing hearing.' " *Allen*, 166 N.C. App. at 149, 601 S.E.2d at 306 (quoting *State v. Ahearn*, 307 N.C. 584, 602, 300 S.E.2d 689, 701 (1983)). Accordingly, we grant defendant's motion for appropriate relief and remand this case to the trial court for resentencing consistent with the holding in *Blakely*.

No prejudicial error in trial; remanded for resentencing.

Judges WYNN and TYSON concur.