STATE OF NORTH CAROLINA v. TIMMY WAYNE SPEIGHT

No. 491PA04

(Filed 1 July 2005)

**Sentencing— *Blakely* error—driving while impaired and manslaughter**

Defendant received a new sentencing hearing for involuntary manslaughter and driving while impaired where the judge found an aggravating factor without a jury determination. The rationale of *State v. Allen*, 359 N.C. 425 (2005) (applying *Blakley v. Washington*, —— U.S. ——, to North Carolina) applies to all cases in which a defendant is constitutionally entitled to a jury trial and a trial court has increased a defendant's

sentence beyond the presumptive range without submitting the aggravating factors to a jury. However, aggravating factors need not be alleged in the indictment.

Justice MARTIN dissenting.

Chief Justice LAKE and Justice NEWBY join in the dissenting opinion.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 166 N.C. App. 106, 602 S.E.2d 4 (2004), finding no prejudicial error in trial but remanding for resentencing after consideration of defendant's motion for appropriate relief from judgments entered on 30 August 2002 by Judge W. Russell Duke, Jr. in Superior Court, Pitt County. On 25 January 2005, defendant filed a second motion for appropriate relief in this Court. Heard in the Supreme Court 15 March 2005.

*Roy Cooper, Attorney General, by Robert C. Montgomery and Patricia A. Duffy, Assistant Attorneys General, for the State-appellant.*

*Margaret Creasy Ciardella for defendant-appellee.*

WAINWRIGHT, Justice.

Defendant Timmy Wayne Speight's convictions and sentences stem from a car crash which occurred early in the evening of 6 June 2001 in Greenville, North Carolina. Defendant was driving a red Camaro automobile northbound on Highway 11. Several witnesses stated that he was quickly changing lanes and driving erratically. At one point, defendant swerved to the left lane to avoid hitting a car in front of him. As he swerved, he lost control of his car, slid across the northbound left lane, crossed a grass median, hit a pole, and collided with a white Buick automobile which was headed south on the highway. Defendant hit the Buick with such force that the automobile flipped over. When emergency medical service (EMS) technicians arrived, they determined that Lynwood Thomas and Donald Ray Thomas, both people in the Buick, were dead. The EMS technicians found defendant injured and trapped in his Camaro. An EMS technician and an investigating police officer smelled alcohol when they looked in the Camaro. Analysis of defendant's blood samples revealed that his blood alcohol level was .13 at the time of the car crash.

Defendant was arrested on 5 July 2001 and indicted on 18 February 2002 for two counts of second-degree murder and one count of driving while impaired.[1] Defendant was tried before a jury during the 26 August 2002 Criminal Session of Pitt County Superior Court. On 30 August 2002, the jury found defendant guilty of two counts of involuntary manslaughter and one count of driving while impaired.

During the sentencing proceeding, the trial court calculated that defendant had a prior record level I for both manslaughter convictions and found the following statutory aggravating factor for both of those convictions: "The defendant knowingly created a great risk of death to more than one person by means of a weapon or device which would normally be hazardous to the lives of more than one person." The trial court also found that the following non-statutory aggravating factor applied to both manslaughter convictions: the defendant killed another person in the course of his conduct. The trial court found the following mitigating factors for both manslaughter convictions: "The defendant has a support system in the community"; and "The defendant has a positive employment history or is gainfully employed." The trial court determined that defendant should receive a Level Two punishment for the impaired driving offense. Pursuant to N.C.G.S. § 20-179(c), the trial court found the following grossly aggravating factor for that offense: The defendant "caused, by [his] impaired driving at the time of the current offense, serious injury to another person." Additionally, pursuant to N.C.G.S. § 20-179(d), the trial court found that the following factor aggravated the seriousness of the impaired driving offense: "The defendant used a motor vehicle in the commission of a felony that led to the death of two people." The trial court found that the aggravating factors outweighed the mitigating factors for all offenses and imposed consecutive aggravated sentences of twenty to twenty-four months for each involuntary manslaughter conviction and a consecutive aggravated sentence of twelve months for the driving while impaired conviction.

Defendant appealed to the Court of Appeals, arguing that he was entitled to a new trial. Defendant filed his brief with the Court of

---

1. On 16 July 2001, defendant was indicted for two counts of attempted murder and one count of driving while impaired. On 20 August 2001, the State obtained correction indictments for these charges. These correction indictments changed the name of one victim from Lynwood Allen Thomas to Lynwood Thomas. On 18 February 2002, the State obtained another indictment correcting the murder offenses charged from attempted murder to second-degree murder.

Appeals in August 2003, before the United States Supreme Court issued *Blakely v. Washington.* —— U.S. ——, 159 L. Ed. 2d 403 (2004) (reversing the trial court's imposition of an aggravated sentence on the criminal defendant because the trial court failed to impose the sentence enhancement solely based on the facts reflected in the jury verdict or admitted by the defendant). Hence, when defendant filed his Court of Appeals brief he was unable to argue that the trial court violated *Blakely* by imposing an aggravated sentence without a jury determination of the existence of the aggravating factors. To pre- serve this argument, defendant filed a motion for appropriate relief with the Court of Appeals while his appeal was pending. In this motion for appropriate relief, defendant argued that the trial court's imposition of a sentence in the aggravated range violated the Sixth Amendment to the United States Constitution as interpreted by *Blakely v. Washington.*

The Court of Appeals considered defendant's motion for ap- propriate relief along with his appeal. The Court of Appeals found no prejudicial error in defendant's trial and conviction; however, it granted defendant's motion for appropriate relief and remanded for resentencing, holding that "[a]s the jury did not decide the aggra- vating factors considered by the trial court, defendant's Sixth Amendment right to a trial by jury was violated." *State v. Speight,* 166 N.C. App. 106, 117, 602 S.E.2d 4, 12 (2004). The court further found that " 'when "the [trial] judge [has] erred in a finding or find- ings in aggravation and imposed a sentence beyond the presumptive term, the case must be remanded for a new sentencing hearing." ' " *Speight,* 166 N.C. App. at 117-18, 602 S.E.2d at 12 (quoting *State v. Ahearn,* 307 N.C. 584, 602, 300 S.E.2d 689, 701 (1983)) (alterations in original), *quoted in State v. Allen,* 166 N.C. App. 139, 149, 601 S.E.2d 299, 306 (2004).

On 23 September 2004, this Court allowed the State's petition for discretionary review as to the issues of (1) whether the Court of Appeals erred by holding that harmless error analysis could not be applied to a constitutional error under *Blakely,* and (2) if so, whether the error in this case was harmless beyond a reason- able doubt. Additionally, on 10 February 2005, this Court agreed to consider defendant's second motion for appropriate relief on the issue of whether, as a result of *Blakely,* his sentence violated *State v. Lucas,* 353 N.C. 568, 548 S.E.2d 712 (2001), because the aggravating circumstances found by the trial court were not alleged in his indictments.

**STATE v. SPEIGHT**

[359 N.C. 602 (2005)]

We now address the issues presented by the State and by defendant. Pursuant to *State v. Allen*, —— N.C. ——, —— S.E.2d —— (2005), we conclude that the trial court committed reversible structural error by finding the aggravating circumstances in this case.

In *Allen*, we held that "*Blakely* errors arising under North Carolina's Structured Sentencing Act are structural and, therefore, reversible *per se*." *Id.* at ——, —— S.E.2d at —— (*Allen* addresses the same issues as the case *sub judice* and is being filed on the same day as the instant case). Therefore, the Court of Appeals properly held that harmless error analysis could not be applied to a constitutional error under *Blakely*, and we need not address the issue of whether the error in this case can be harmless beyond a reasonable doubt.

Although our holding in *Allen* specifically applies only to sentences imposed under North Carolina's Structured Sentencing Act, the rationale in *Allen* applies to all cases in which (1) a defendant is constitutionally entitled to a jury trial, and (2) a trial court has found one or more aggravating factors and increased a defendant's sentence beyond the presumptive range without submitting the aggravating factors to a jury. *See Allen*, —— N.C. at ——, —— S.E.2d at —— ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed presumptive range must be submitted to a jury, and proved beyond a reasonable doubt."). Defendant was entitled to a jury trial for his impaired driving offense. Although the offense is a misdemeanor, *see* N.C.G.S. § 20-138.1, it is punishable by more than six months imprisonment.[2] *See Baldwin v. New York*, 399 U.S. 66, 69, 26 L. Ed. 2d 437, 440 (1970) ("[N]o offense can be deemed 'petty' for purposes of the right to trial by jury where imprisonment for more than six months is authorized."). Defendant was also constitutionally entitled to a jury trial for his involuntary manslaughter convictions. *See id.* The trial court improperly found the aggravating circumstances in this case and imposed aggravated sentences for all three convictions. Therefore, the Court of Appeals

---

2. We note that the instant case does not create original jurisdiction for misdemeanors in superior court, nor does it create a right to a jury trial in district court for misdemeanors. District court generally has original jurisdiction to try misdemeanors, including misdemeanor impaired driving. *See* N.C.G.S. §§ 7A-271, -272 (2003). However, in this case defendant's misdemeanor charge was consolidated with the felony murder charges. Thus, the superior court had exclusive, original jurisdiction over all three charges, and defendant had an immediate right to a jury trial on the impaired driving charge. *See id.* § 7A-271(a)(3). In cases where district court has exclusive original jurisdiction over misdemeanors, defendants do not have a right to a jury trial in district court and can obtain a jury trial only by appealing to superior court for a trial de novo. *Id.* § 7A-271(b).

properly remanded this case to the trial court for resentencing consistent with *Blakely*, and defendant is entitled to resentencing for all his convictions.

Additionally, pursuant to *Allen*, we conclude that aggravating factors need not be alleged in an indictment. —— N.C. at ——, —— S.E.2d at —— (overruling the language in *State v. Lucas* "requiring sentencing factors which might lead to a sentencing enhancement to be alleged in an indictment," finding no error in the State's failure to include aggravating factors in the defendant's indictment, and stating that in *State v. Hunt*, "[T]his Court concluded that 'the Fifth Amendment would not require aggravators, even if they were fundamental equivalents of elements of an offense, to be pled in a state-court indictment.' " (quoting *State v. Hunt*, 357 N.C. 257, 272, 582 S.E.2d 593, 603, *cert. denied*, 539 U.S. 985, 156 L. Ed. 2d 702 (2003)). Therefore, defendant's sentence does not violate *Lucas* and defendant's second motion for appropriate relief is denied.

MODIFIED AND AFFIRMED.

Justice MARTIN dissenting.

For the reasons stated in my concurring and dissenting opinion in *State v. Allen*, —— N.C. ——, —— S.E.2d —— (July 1, 2005) (No. 485PA04), I disagree with the majority's conclusion that *Blakely* errors are categorically excepted from harmless-error review. Indeed, the present case provides a perfect illustration of the majority's well-intentioned, but ultimately misguided, approach to appellate review of *Blakely* errors. Applying the harmless-error standard for federal constitutional errors to the facts presented, as compelled by the United States Supreme Court's decision in *Neder v. United States*, 527 U.S. 1, 144 L. Ed. 2d 35 (1999), it is manifest that the *Blakely* violation in the instant case was harmless beyond a reasonable doubt.

Defendant, whose reckless driving resulted in the deaths of two innocent people, was convicted of two counts of involuntary manslaughter and one count of driving while impaired. The trial court elevated defendant's sentence for the two manslaughter convictions based on its finding of (1) the statutory aggravating factor, "[t]he defendant knowingly created a great risk of death to more than one person by means of a weapon or device which would normally be hazardous to the lives of more than one person," N.C.G.S. § 15A-1340.16(d)(8) (2001), and (2) a non-statutory aggravating

factor, "in the course of conduct, the defendant killed another [person]." Defendant's sentence for driving while impaired was elevated based on the trial court's finding of (1) the grossly aggravating factor, defendant "caused, by [his] impaired driving at the time of the current offense, serious injury to another person," and (2) a nonstatutory aggravating factor, "defendant used a motor vehicle in the commission of a felony that led to the death of two people."

I agree that the trial court's failure to submit the challenged aggravating factors to the jury violated defendant's Sixth Amendment right to a jury trial as articulated in *Blakely v. Washington*, —— U.S. ——, ——, 159 L. Ed. 2d 403, 415 (2004). It is difficult to imagine, however, a clearer example of a non-prejudicial trial error. Unlike the situation presented in *State v. Allen*, the evidence presented in support of all four aggravating factors in the instant case was both "uncontroverted" and "overwhelming," such that there can be no reasonable doubt that a rational jury would have found these factors had the *Blakely* error not occurred. *Neder*, 527 U.S. at 16-19, 144 L. Ed. 2d at 52-53.

The uncontroverted evidence presented by the state may be summarized as follows: On the day of the fatal collision, defendant was driving a Camaro sports car on Highway 11 in Pitt County, North Carolina. Several witnesses observed defendant weaving in and out of heavy rush hour traffic at speeds estimated between sixty and eighty miles per hour. As he passed through a traffic light, defendant cut in front of another vehicle and lost control of the Camaro. Defendant skidded across a median, hit a pole, and collided head-on with an automobile traveling in the opposite direction. Defendant struck the oncoming vehicle with such force that it flipped over and landed on its roof, instantly killing the driver, Lynwood Thomas, and his twenty-year-old son, Donald Thomas.

Jeffrey Maye, a member of the EMS unit that arrived on the scene shortly after the collision, testified that he noticed an odor of alcohol in the Camaro as he helped extract defendant from the vehicle. Officer M.L. Montayne of the Greenville Police Department, one of the first responders at the scene, also testified that he detected an odor of alcohol inside the Camaro and, later, on defendant's breath. Based on the odor of alcohol he detected in defendant's vehicle and on defendant's breath, in addition to the severity of the collision and the accounts of four witnesses he interviewed at the scene, Officer Montayne formed the opinion that defendant was appreciably

impaired as a result of alcohol consumption and charged defendant with driving while impaired. An analysis of defendant's blood conducted by the State Bureau of Investigation revealed that defendant had a blood alcohol concentration (BAC) of 0.10 over two hours after his arrest. A retrograde extrapolation of the same blood test results further indicated that defendant's BAC was 0.13 at the time of the fatal collision. In addition, a drug screen revealed the presence of THC, an active chemical compound found in marijuana, in defendant's blood.

In light of this uncontested and overwhelming evidence involving the confluence of excessive speed, reckless driving, and abuse of alcohol and illegal drugs, there can be no reasonable doubt that had the *Blakely* error not occurred, a rational jury would have found all four of the aggravating factors submitted by the prosecution. As to the statutory (d)(8) aggravator, defendant's reckless, drunken driving manifestly "created a great risk of death to more than one person by means of a weapon or device which would normally be hazardous to the lives of more than one person." N.C.G.S. § 15A-1340.16(d)(8). Moreover, because a reasonable person would have known that such wanton disregard for the safety of others poses a "great risk of death to more than one person," defendant created that risk "knowingly" for purposes of the aggravating factor. *See State v. Carver*, 319 N.C. 665, 667, 356 S.E.2d 349, 351 (1987) (stating that "[a]ny reasonable person should know" that firing a gun into a crowd of people creates a great risk of death for two or more people and concluding that "the defendant created this risk knowingly").

As for the remaining aggravating factors—that defendant (1) "in the course of conduct . . . killed another [person]," (2) "caused, by [his] impaired driving at the time of the current offense, serious injury to another person," and (3) "used a motor vehicle in the commission of a felony that led to the death of two people," the deaths of Lynwood and Donald Thomas, along with defendant's two manslaughter convictions, provide tragic and indisputable proof.

Oliver Wendell Holmes famously stated that "[t]he life of the law has not been logic: it has been experience." Oliver Wendell Holmes, Jr., *The Common Law* 1 (1923). In *Neder*, when considering whether the trial court's "failure to instruct on an element of the crime" was a structural defect not amenable to harmless-error analysis, the United States Supreme Court cited Holmes' aphorism, stating that "if the life of the law has not been logic but experience,

we are entitled to stand back and see what would be accomplished" by such a holding. 527 U.S. at 15, 144 L. Ed. 2d at 50-51 (citation omitted). Not surprisingly, the Court concluded that the practical results of "send[ing] the case back for retrial," despite uncontroverted and overwhelming evidence of the defendant's guilt, were unacceptable. *Id.* at 15, 144 L. Ed. 2d at 51.

Upon application of Holmes' common sense principle to the analogous issue presented here, the emptiness of the majority's formalism becomes apparent. Defendant engaged in criminally reckless conduct that resulted in the deaths of two innocent motorists. He was represented by competent legal counsel and convicted by a jury of his peers of two counts of manslaughter and one count of driving while impaired. Although the trial court's failure to submit the aggravating factors at issue for jury determination admittedly violated the subsequently enunciated principles of *Blakely v. Washington,* the evidence in support of those factors was uncontroverted and overwhelming. It is simply inconceivable that a rational jury would fail to find those aggravating factors beyond a reasonable doubt.

If the life of the law has been experience, not logic, this Court is entitled to step back to see what will be accomplished by the disposition of the instant case. The Court today affirms the vacation of defendant's sentence because of an error that caused defendant no actual prejudice and remands for a new sentencing hearing whose outcome is preordained. Following this decision, the case will again be docketed in the Pitt County Superior Court, where prospective jurors will be summoned, *voir dire* will be conducted, and a panel of twelve jurors will be installed, instructed, and asked to deliberate— all to reconfirm a trial judge's factual determinations that (1) a criminal defendant who drove a car erratically and at high speeds during rush hour on a busy highway while intoxicated and under the influence of marijuana created a "great risk of death to more than one person," and (2) that the two people he killed as a result of that conduct are actually dead.

To vacate and remand under such circumstances is contrary to precedent and common sense and tends to "justify the very criticism that spawned the harmless-error doctrine in the first place: 'Reversal for error, regardless of its effect on the judgment, encourages litigants to abuse the judicial process and bestirs the public to ridicule it.' " *Id.* at 18, 144 L. Ed. 2d at 53 (quoting Roger J. Traynor, *The Riddle of Harmless Error* 50 (1970)).

I respectfully dissent.

Chief Justice LAKE and Justice NEWBY join in this dissenting opinion.