STATE OF NORTH CAROLINA v. JOSE SANCHEZ

No. COA04-518

(Filed 2 August 2005)

**1. Witnesses— cross-examination—priest—testimony about confession**

A defendant charged with indecent liberties was not deprived of his right to a fair trial by not being able to adequately cross-examine a priest who testified about his general practice when hearing confessions from abuse victims, but did not testify about this victim's confession. Any error was rendered harmless by other overwhelming evidence of guilt.

**2. Sentencing— aggravating factor—*Blakely* error—jury finding required**

Any fact (other than a prior conviction) that increases the penalty beyond the presumptive range must be submitted to a jury and proven beyond a reasonable doubt. A sentence in the aggravated range for indecent liberties based on a unilateral finding by the judge was remanded.

Appeal by defendant from judgment entered 26 August 2003 by Judge Richard D. Boner in Mecklenburg County Superior Court. Heard in the Court of Appeals 11 January 2005.

*Attorney General Roy Cooper, by Assistant Attorney General Diane G. Miller, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Barbara S. Blackman, for defendant-appellant.*

TYSON, Judge.

Jose Sanchez ("defendant") appeals from judgment entered after a jury found him to be guilty of taking indecent liberties with a child. We hold that defendant received a fair trial free from error, vacate defendant's sentence, and remand for resentencing.

## I. Background

E.S. ("the minor") was born on 15 April 1986. In September 1999 when she was thirteen years old, she moved from her grandparents' home in El Salvador to North Carolina to live with her mother, Ana Sanchez ("Sanchez"), and her father, defendant.

The minor dated seventeen-year-old Salvadore Ruiz ("Ruiz"), who worked with defendant. Ruiz and the minor had a sexual relationship, which resulted in the minor becoming pregnant in September 2001.

On 24 September 2001, the minor signed herself out of school and called Ruiz to pick up her. While with Ruiz, the minor wrote a letter to Sanchez stating that she had run away with Ruiz and requested her not to call the police. The minor left the note at home and spent the rest of the day with Ruiz.

On 25 September 2001, defendant reported that his daughter was missing and informed Officer Gilberto Narvaez ("officer Narvaez") he believed his daughter was with Ruiz. Officer Narvaez located Ruiz at a job site, questioned him about his relationship with the minor, and

informed Ruiz that the minor was fifteen years old. Ruiz escorted Officer Narvaez to his apartment where both had spent the night.

When Officer Narvaez began questioning the minor, she became very upset and stated that her father had been "having relations" with her for over a year. Officer Carmen Mendoza ("Officer Mendoza"), a female, was called to the scene. The minor informed Officer Mendoza that her father began having sexual intercourse with her in January 2000, when she was thirteen years old. She claimed that several times a week, her father would come into her room in the middle of the night, take off her clothes, and have sex with her. The minor stated intercourse ceased in March 2001, but defendant continued to touch her breasts and buttocks. The minor's testimony at trial was consistent with her statement.

The minor testified she first informed Father Joseph Elzi ("Father Elzi") of the abuse during a Mass near her fifteenth birthday. Father Elzi testified at trial, but refused to reveal whether the minor had participated in confession or what she had told him. He testified that when a confessant tells him of sexual abuse, he advises them to speak to another priest, counselor, or other person to report to authorities.

Sanchez testified she informed social service personnel that defendant did not leave the marital bedroom during the night and that she had never found defendant alone with the minor in the minor's bedroom. Sanchez later testified to one incident where she woke up and defendant was not in their bed. She found him on top of the minor, who was wearing only underwear. On another occasion, Sanchez observed defendant lying on top of the minor on the couch. She also recalled that after hearing the minor screaming in her room, she ran to the minor, who told her defendant had touched her breasts. Sanchez did not inform the social worker about these incidents in September 2001 and was living with a new boyfriend by the time of trial.

No physical evidence was admitted. Defendant was found to be not guilty of felonious incest and statutory rape, and guilty of taking indecent liberties with a child. Defendant appeals.

## II.  Issues

The issues on appeal are whether the trial court erred in: (1) admitting testimony by Father Elzi relating to the minor's statements to him; and (2) sentencing defendant in the aggravated range without a finding by the jury of aggravating factors.

## III. Sixth Amendment Right of Confrontation

[1] Defendant contends he was deprived of a fair trial because he was unable to adequately cross-examine Father Elzi. We disagree.

On 2 May 2003, Judge Yvonne Mims-Evans heard a motion to quash the subpoena filed by Father Elzi. During the hearing, Father Elzi testified that although North Carolina law allows a penitent to waive the penitent-priest privilege, to reveal the confession would compromise his religious beliefs. Judge Mims-Evans denied the motion to quash and ordered that admissibility of any questions concerning confidential communication would be determined by the trial court.

Prior to Father Elzi testifying at trial, the trial court ruled he could be questioned regarding his practice and customs in general, but that the State could not question him regarding any individual's and specifically the minor's confession to him. Father Elzi testified that upon hearing "that some sort of sexual assault has occurred," he advises a victim to "report it to proper authorities." Defendant objected but did not cross-examine Father Elzi, or make any offer of proof.

Defendant argues the trial court erred by allowing Father Elzi's testimony regarding the advice he gives to alleged victims of sexual abuse that corroborated the minor's testimony. Defendant argues he was denied his Sixth Amendment right of confrontation because he was not allowed to fully cross-examine Father Elzi regarding the minor's confession.

Our United States Supreme Court has held:

> In all criminal prosecutions, state as well as federal, the accused has a right, guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution to be confronted with the witnesses against him. The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact.

*Lilly v. Virginia*, 527 U.S. 116, 123-24, 144 L. Ed. 2d 117, 126 (1999) (internal quotations and citations omitted); *see also Crawford v. Washington*, 541 U.S. 36, 158 L. Ed. 2d 177 (2004). "Confrontation means more than being allowed to confront the witness physically. 'Our cases construing the [confrontation] clause hold that a primary

interest secured by it is the right of cross-examination.' " *Davis v. Alaska*, 415 U.S. 308, 315, 39 L. Ed. 2d 347, 353 (1974) (quoting *Douglas v. Alabama*, 380 U.S. 415, 13 L. Ed. 2d 934, 937 (1965)); *see also Crawford*, 541 U.S. 36, 158 L. Ed. 2d 177. A defendant must be afforded "an adequate opportunity to cross-examine adverse witnesses." *United States v. Owens*, 484 U.S. 554, 557, 98 L. Ed. 2d 951, 956 (1988). "Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested." *Davis*, 415 U.S. at 316, 39 L. Ed. 2d at 353.

Here, defendant neither attempted to cross-examine Father Elzi nor did he request a *voir dire* or make an offer of proof regarding the questions he would have asked or what Father Elzi's testimony would have revealed. *See State v. Williams*, 355 N.C. 501, 534, 565 S.E.2d 609, 629 (2002), *cert. denied*, 537 U.S. 1125, 154 L. Ed. 2d 808 (2003). Based on the transcript before us, we find that no testimony was erroneously admitted or excluded. Father Elzi did not testify to the contents of any statements the minor made to him. Presuming error in admitting Father Elzi's testimony, other overwhelming evidence of defendant's guilt based on the testimony by Officers Navarez and Mendoza, the victim, and Sanchez renders any error harmless beyond a reasonable doubt. This assignment of error is overruled.

## IV. Aggravated Sentencing

[2] Defendant contends the trial court erred by sentencing him in the aggravated range based on a finding by the trial court that "defendant took advantage of a position of trust of confidence to commit the offense."

Our Supreme Court recently addressed and ruled on this issue in *State v. Allen*, 359 N.C. 425, ——, —— S.E.2d ——, —— (July 1, 2005) (No. 485PA04) and *State v. Speight*, 359 N.C. 602, 606, —— S.E.2d ——, —— (July 1, 2005) (No. 491PA04). In vacating the defendant's aggravated sentence in *Allen*, our Supreme Court held "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed presumptive range must be submitted to a jury and proved beyond a reasonable doubt." 359 N.C. at 437, —— S.E.2d at ——.

The Court later stated in *Speight*, "the rationale in *Allen* applies to all cases in which (1) a defendant is constitutionally entitled to a jury trial, and (2) a trial court has found one or more aggravating factors and increased a defendant's sentence beyond the presumptive

range without submitting the aggravating factors to a jury." 359 N.C. at 606, —— S.E.2d at ——.

Based on our Supreme Court's holding in *Allen* and *Speight*, the trial court erred by sentencing defendant in the aggravated range without submission to or a finding by the jury beyond a reasonable doubt to support the aggravated sentence. Defendant's sentence is vacated and remanded for imposition of a sentence consistent with our Supreme Court's decisions in *Allen* and *Speight*.

## V. Conclusion

The trial court did not err in admitting Father Elzi's testimony regarding his customs and practices upon learning information of abuse. We hold defendant received a fair trial free from error. The trial court erred by sentencing defendant in the aggravated range without submitting the aggravating factors to a jury. Defendant's sentence is vacated and remanded for imposition of a sentence consistent, with our Supreme Court's decisions in *Allen* and *Speight*.

No Error at trial; Sentence Vacated and Remanded for Resentencing.

Judges WYNN and McGEE concur.